**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MERITAGE HOSPITALITY GROUP INC., *et al.*,[1] | ) | Case No. 26-02947 (JWB) |
| Debtors. | ) | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DEBTORS' PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, (III) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR RESOLVING ADDITIONAL ASSURANCE REQUESTS, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (the "Motion"):

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"), (a) approving, but not directing, the Debtors' Proposed Adequate Assurance of payment of future utility services and determining that such Proposed Adequate Assurance provides Utility Providers with adequate assurance of payment under section 366 of the Bankruptcy Code; (b) prohibiting Utility Providers from altering, refusing, or discontinuing service; (c) approving the Debtors' proposed procedures for resolving additional adequate assurance requests; and (d) granting related relief.

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Meritage Hospitality Group Inc. (0460); MHG Food Service, Inc. (5926); OCM Development, LLC (7384); Wen Carolinas, LLC (3792); Wen Georgia, LLC (7369); Wen Ohio, LLC; (5959); Wen Oklahoma, LLC (8802); Wen South, LLC (1229); Wen Tennessee, LLC (2477); Wen Virginia, LLC (2840); WM Limited Partnership-1998 (9989); RES Management, LLC (9105); Inspired By Opportunity, LLC (3681); Uncommon Hospitality, LLC (8858); and Chicken Ventures, LLC (7215). The corporate headquarters and the mailing address for the Debtors is 45 Ottawa Ave SW Suite 600, Grand Rapids, MI 49503.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Western District of Michigan (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013 of the Local Bankruptcy Rules for the Western District of Michigan (the "Bankruptcy Local Rules").

**Background**

5. On September 17, 2026 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have requested that the chapter 11 cases (the "Chapter 11 Cases") be jointly administered.

6. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases.

8. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Kevin Cleary, Chief Restructuring Officer of Meritage Hospitality Group, Inc., in Support of Debtors'*

*Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed contemporaneously with the Motion.[2]

**The Utility Services and Proposed Adequate Assurance**

## I. Utility Services and Utility Providers

9. The Debtors obtain electricity, natural gas, water and sewage, data and telecommunications, garbage and other services in connection with the operation of their businesses (collectively, the "Utility Services"). A list of the Utility Providers and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Providers List") is attached as **Exhibit 1** to the proposed Order.[3]

10. The relief requested is with respect to all Utility Providers providing Utility Services to the Debtors at any point during the Chapter 11 Cases.

11. Uninterrupted Utility Services is essential to operating and thus maximizing the value of the Debtors' business. As of the Petition Date, the Debtors' business includes approximately 320 restaurant locations, as well as a corporate office. Each of these locations require electricity, telecommunications, heat, water, waste management (including sewer and trash), and other Utility Services to operate. Should any Utility Provider refuse or discontinue service, even for a brief period, the Debtors' business operations and safety procedures could be severely disrupted, and such disruption would jeopardize the Debtors' reorganization efforts.

---

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

[3] Although the Debtors believe that the Utility Providers List includes all of their Utility Providers, the Debtors reserve the right to supplement such list if they inadvertently omitted any Utility Provider. Additionally, inclusion or exclusion of an entity on the Utility Providers List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any determination. The Debtors request relief applicable to all Utility Providers, regardless of whether such Utility Provider is specifically identified on Exhibit 1 of the Order.

Accordingly, it is essential that the Utility Services continue uninterrupted during the pendency of the Chapter 11 Cases.

12. As of the Petition Date, the Debtors owe approximately $980,000.00 on account of prepetition Utility Services. On average, the Debtors pay approximately $1,720,000.00 each month in the aggregate for the Utility Services, excluding payments for certain utilities that are paid through rent at certain of the Debtors' locations. This average is calculated based on a historical monthly average of payments[4] to the Utility Providers for the twelve months preceding the Petition Date. The Debtors estimate that their aggregate cost for Utility Services during the 30 days following the Petition Date will be approximately $1,720,000.00.

## II. Adequate Assurance

13. The Debtors ask that the Court approve, but not direct, the provision of adequate assurance deposits and adequate assurance procedures to assure uninterrupted Utility Services. Continued Utility Services are essential to the Debtors' ongoing business operations and the overall success of the Chapter 11 Cases. If any Utility Provider refuses or discontinues service, even for a brief period, the Debtors' business operations would be severely disrupted. Cessation of Utility Services would impair the Debtors' ability to operate their restaurants. It is essential that the Utility Services continue uninterrupted during the Chapter 11 Cases. The Debtors ask the Court to approve, but not direct, their proposed adequate assurance deposits and adequate assurance procedures.

## III. Proposed Adequate Assurance of Payment

14. The Debtors intend to timely pay postpetition obligations owed to the Utility Providers in the ordinary course of business and consistent with past practices. The cash generated

---

[4] A limited subset of Utility Services are paid bi-weekly or semi-annually. In these circumstances, the average amount paid was considered for the purposes of calculating the Adequate Assurance Deposit.

in the ordinary course of business and amounts available to the Debtors under their proposed cash collateral order will provide sufficient liquidity to pay the Debtors' Utility Service obligations in accordance with their prepetition practice during the pendency of the Chapter 11 Cases.

15. To provide additional assurance of payment, the Debtors propose to earmark for the utility providers a total of $300,000 (the "Adequate Assurance Deposit"). This deposit represents an amount sufficient to cover approximately one-half of the Debtors' estimated average monthly cost of Utility Services, calculated based on the Debtors' average utility expenses for the approximately twelve-month period preceding the Petition Date. The Adequate Assurance Deposit does not include adequate assurance amounts for those utilities that are paid through the Debtors' rent at certain locations. The Debtors also currently have approximately $1,120,000.00 in deposits with their various electric, gas, water, and various other Utility Providers, and the Adequate Assurance Deposit is in addition to such deposits already with the Utility Providers.

16. The Adequate Assurance Deposit will be earmarked solely for the benefit of the Utility Providers (the "Adequate Assurance Account") for the duration of the Chapter 11 Cases. Funds deposited in the Adequate Assurance Account may only be applied to any postpetition defaults in payment to the Utility Providers. The Adequate Assurance Deposit will be held in a segregated account in the Debtors' bank. The Debtors will deposit the Adequate Assurance Deposit within five business days of entry of the Order.

17. The Adequate Assurance Deposit, in conjunction with the Debtors' cash flow from operations, cash on hand, and access to cash collateral, demonstrates the Debtors' ability to pay for future Utility Services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance") and constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

## IV. The Adequate Assurance Procedures

1. 18. Any Utility Provider that is not satisfied with the Proposed Adequate Assurance may make a request for additional or different adequate assurance of future payment (each, an "Adequate Assurance Request") pursuant to the adequate assurance procedures set forth as follows and in the proposed order (the "Adequate Assurance Procedures"):

a. Subject to paragraphs (b)–(f), the Debtors will deposit the Adequate Assurance Deposit in the aggregate amount of $300,000 into the Adequate Assurance Account within five (5) business days after entry of the order approving this Motion.

b. Any Utility Provider desiring additional or different adequate assurances of payment in the form of deposits, prepayments, or otherwise must serve a request for additional or different assurance (an "Adequate Assurance Request") on the Notice Parties. An Adequate Assurance Request may be made at any time.

c. Any Adequate Assurance Request must (i) be in writing, (ii) identify the location for which the Utility Services are provided, (iii) summarize the Debtors' payment history relevant to the affected account(s), including any security deposits, (iv) explain why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment and (v) certify that the Utility Provider does not already hold a Prepetition Deposit equal to or greater than two weeks of Utility Services.

d. Upon the Debtors' receipt of any Adequate Assurance Request, the Debtors shall promptly negotiate with such Utility Provider to resolve such Utility Provider's Adequate Assurance Request.

e. The Debtors may, without further order from the Court, resolve any Adequate Assurance Request by mutual agreement with a Utility Provider, and the Debtors may, in connection with any such agreement, provide a Utility Provider with additional adequate assurance of payment, including but not limited to, cash deposits, prepayments, or other forms of security if the Debtors believe that such adequate assurance is reasonable.

f. If the Debtors and the Utility Provider are not able to reach an alternative resolution within 14 days of receipt of the Adequate Assurance Request, the Debtors or the Utility Provider may request a hearing before the Court to determine the adequacy of assurances of payment with respect to a particular Utility Provider (the "Determination Hearing") pursuant to section 366(c)(3) of the Bankruptcy Code. Pending resolution of any such Determination Hearing, the Utility Provider filing such Adequate Assurance Request shall be prohibited from altering, refusing or discontinuing Utility Services to the Debtors on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

19. The Adequate Assurance Procedures set forth a streamlined process for Utility Providers to address potential concerns with respect to the Proposed Adequate Assurance, while at the same time allowing the Debtors to efficiently operate their businesses. The Adequate Assurance Procedures also permit a Utility Provider to object to the Proposed Adequate Assurance by filing and serving an Adequate Assurance Request upon certain Notice Parties (as defined in the Order). The Debtors seek authority to resolve any Adequate Assurance Request by mutual agreement with the Utility Provider without further order of the Court. If the Adequate Assurance Request cannot be resolved by agreement, the Debtors may seek Court resolution of the Adequate Assurance Request. Unless and until a Utility Provider files an objection or serves an Additional Assurance Request, such Utility Provider shall be: (a) deemed to have received adequate assurance of payment "satisfactory" to such Utility Provider in compliance with section 366 of the Bankruptcy Code; and (b) forbidden to discontinue, alter, or refuse services to, or discriminate against, the Debtors on account of any unpaid prepetition charges, or require additional assurance of payment other than the Proposed Adequate Assurance.

**V. Modifications to the Utility Services List**

20. The Debtors made a good faith effort to identify Utility Providers and include them on the Utility Service List. To the extent the Debtors identify additional Utility Providers or discontinue Utility Services, the Debtors seek authority, but not direction, to amend the Utility Service List to add or remove any Utility Provider. The Debtors further request that the relief sought herein, including the proposed Adequate Assurance Procedures, and the Order granting this Motion apply to any subsequently identified or contracted Utility Provider, regardless of when such Utility Provider was added to the Utility Service List.

21. The Debtors will serve a copy of this Motion and the order approving the requested relief on any Utility Provider subsequently added to the Utility Service List. Any subsequently added Utility Provider shall have 20 days from the date of service of this Motion and the Order to make a request for adequate assurance of payment.

22. The Debtors shall have the period specified in the proposed Adequate Assurance Procedures to resolve any subsequently added Utility Provider's request for adequate assurance of payment by agreement with the Utility Provider without further order of this Court or the need to schedule a hearing with this Court to determine the adequacy of assurance payment.

23. The Debtors request that all Utility Providers, including subsequently added Utility Providers to the Utility Providers List, be prohibited from altering, refusing, or discontinuing any Utility Services to the Debtors absent further order of the Court.

**Basis for Relief**

24. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. *See* 11 U.S.C. § 366. Section 366(c) of the Bankruptcy Code requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty days of the petition date, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) of the Bankruptcy Code provides a non-exhaustive list of examples of what constitutes "assurance of payment." *Id.* § 366(c)(1). Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay. *See, e.g., In re Great Atl. & Pac. Tea Co*., 2011 WL 5546954, at *5 (S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full"); *In re*

*Caldor,* Inc., 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires . . . 'adequate assurance' of payment. The statute does not require an absolute guarantee of payment." (citation omitted)), *aff'd sub nom. Va. Elec. & Power Co. v. Caldor, Inc*., 117 F.3d 646 (2d Cir. 1997).

25. The Court should examine the totality of the circumstances when determining whether a given assurance of payment is "adequate" and whether the Utility Provider will be subject to an unreasonable risk of nonpayment. *See, e.g.*, *In re Keydata Corp.*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981). "[A] bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Va. Elec. & Power Co. & Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) (internal quotations omitted); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").

26. Termination of the Utility Services would result in the Debtors' inability to operate. Cessation of business operations would be catastrophic to the Debtors and their estates. *See, e.g.*, *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 321–22 (Bankr. E.D. Pa. 1988) (noting that, without utility service, the debtors "would have to cease operations"). The Utility Providers are adequately assured against any risk of nonpayment for future services. The Adequate Assurance Deposit and the Debtors' ongoing ability to meet obligations as they come due as demonstrated in the proposed budget provide assurance that the Debtors will pay their future obligations to the Utility Providers.

27. Courts are permitted to fashion reasonable procedures, such as the proposed Adequate Assurance Procedures, to implement the protections afforded under section 366 of the Bankruptcy Code. *See, e.g.*, *In re Circuit City Stores Inc.*, No. 08-35653, 2009 WL 484553, at *5

(Bankr. E.D. Va. Jan. 14, 2009). Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize." *Id.* Notwithstanding a determination that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Providers believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See id.* at *5-6. The Utility Providers may elect, in accordance with the Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* at *6. The Adequate Assurance Procedures avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. *See id.* at *5.

28. The Adequate Assurance Procedures are reasonable and align with the purposes of section 366 of the Bankruptcy Code. The Court possesses the power under section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of section 366. Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve, but not direct, both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

**Processing of Checks and Electronic Fund Transfers Should be Authorized**

29. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management

system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests with respect to the relief requested in this Motion.

## **Emergency Consideration**

30. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case to the extent that "relief is needed to avoid immediate and irreparable harm." An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations, and any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of the Chapter 11 Cases would severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

31. Immediate relief is required to ensure the uninterrupted provision of Utility Services, as any delay could result in service interruptions, demands for additional deposits, or the exercise of remedies by utility providers, which would materially disrupt the Debtors' operations, impair location-level functionality, and jeopardize the Debtors' ability to effectuate an orderly transition into chapter 11. Given the Debtors' reliance on continuous utility services across their

locations, the failure to obtain the requested relief at the outset of the Chapter 11 Cases would cause immediate and irreparable harm and could imperil the Debtors' restructuring efforts.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

32. The Debtors request that the Court enter an order providing that notice of the relief requested satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

33. Nothing contained herein is intended or should be construed as: (a) an admission as to the validity or priority of any claim or lien against the Debtors; (b) a waiver of the Debtors' rights to subsequently dispute such claim or lien on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or the proposed Order; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**Notice**

34. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the Western District of Michigan; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Prepetition Lenders; (d) the Office of the United States Attorney for the Western District of Michigan; (e) the state attorneys general for states in which the Debtors conduct business; (f) the Internal Revenue Service; (g) OTC Markets Group; (h) the Environmental Protection Agency; (i) other governmental agencies having a regulatory or statutory interest in these cases; (j) the

Utility Providers; (k) Quality Is Our Recipe, LLC; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of page left blank intentionally]*

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

September 18, 2026

Respectfully submitted,

*/s/ Scott N. Opincar*

**MCDONALD HOPKINS LLC**
Scott N. Opincar
Michael J. Kaczka
Maria G. Carr (*pro hac vice* pending)
600 Superior Ave. East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Email: sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com

*Proposed Counsel for the Debtors*
*and Debtors in Possession*