**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MERITAGE HOSPITALITY GROUP INC., *et al.*,[1] | ) | Case No. 26-02947 (JWB) |
| Debtors. | ) | (Joint Administration Requested) |

**DECLARATION OF KEVIN CLEARY IN SUPPORT OF DEBTOR, OCM DEVELOPMENT, LLC'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION AND RELATED RELIEF; AND (III) SCHEDULING A FINAL HEARING (UNION BANK)**

I, Kevin Cleary, hereby declare under penalty of perjury:

1. I am the Chief Restructuring Officer of the above-captioned debtors and debtors in possession in the Chapter 11 Cases, and I am authorized to make this declaration.[2]

2. I am the managing partner and founder of Fort Dearborn Partners, which has provided strategic planning and profit improvement services to troubled companies for over 36 years. My experience includes service as interim chief executive officer or chief restructuring officer in manufacturing, printing, and distribution companies, among other industries, as well as serving as lead financial advisor in over eighty successful divestiture or distressed acquisition transactions. Before establishing Fort Dearborn Partners, I was partner in charge of the business and financial consulting practice at Grant Thornton in Chicago.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Meritage Hospitality Group Inc. (0460); MHG Food Service, Inc. (5926); OCM Development, LLC (7384); Wen Carolinas, LLC (3792); Wen Georgia, LLC (7369); Wen Ohio, LLC; (5959); Wen Oklahoma, LLC (8802); Wen South, LLC (1229); Wen Tennessee, LLC (2477); Wen Virginia, LLC (2840); WM Limited Partnership-1998 (9989); RES Management, LLC (9105); Inspired By Opportunity, LLC (3681); Uncommon Hospitality, LLC (8858); and Chicken Ventures, LLC (7215). The corporate headquarters and the mailing address for the Debtors is 45 Ottawa Ave SW Suite 600, Grand Rapids, MI 49503.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms as set forth in the *Declaration of Kevin Cleary in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") fully incorporated herein, or the Cash Collateral Motion.

3. I was retained by the Debtor on December 31, 2025. As Chief Restructuring Officer, I am generally familiar with the Debtor's day-to-day operations, business affairs, and books and records. I submit this declaration (the "Declaration") in support of the *Debtor, OCM Development, LLC's Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection, Liens and Superpriority Claims to the Secured Lenders for the Use Thereof; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to the Use of Cash Collateral; and (IV) Granting Related Relief* (the "Cash Collateral Motion").[3]

4. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, my discussions with the Debtors' management team and advisors, information learned from my review of relevant documents, and information supplied to me by members of the Debtors' management team, and consultation with the Debtors' professional advisors, including other professionals of Fort Dearborn Partners, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial condition. I am over the age of eighteen and am authorized to submit this Declaration on behalf of the Debtors. If called upon to testify, I could and would testify competently to the facts set forth herein.

**The Debtors' Immediate Need for Access to Cash Collateral**

5. The Debtor requires immediate access to Cash Collateral on an urgent basis. As of the Petition Date, the Debtor has less than $5,000,000 of cash on hand, which is insufficient to operate the Debtor through October 16, 2026. Facing a liquidity crisis, the Debtor, with the

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Cash Collateral Motion.

assistance of its advisors, including Fort Dearborn Partners, determined that it required immediate access to Cash Collateral to address its postpetition financing needs.

6. OCM Development, LLC is the Borrower under the loan documents with Union Bank (the "Lender") and Debtor Meritage Hospitality Group Inc. is a guarantor of the obligations owed to Lender (an unsecured guaranty).

7. Access to Cash Collateral in accordance with the Budget will provide the Debtor with the means to maintain operations (including in the immediate term) at the Standale location and to fund its Chapter 11 Case in accordance with the Budget through the budget period.

8. The Debtor must immediately access Cash Collateral in order to maximize the value of the estate. Without authorization to use Cash Collateral, the Debtor will not have sufficient liquidity to operate its business through its Chapter 11 Case. In my view, absent the immediate access to Cash Collateral, the Debtor would suffer immediate and irreparable harm, and the value of its assets and business would be severely diminished to the detriment of all stakeholders.

9. As set forth in the Budget, the proceeds of Cash Collateral will be used to fund general working capital, operational expenses, and restructuring expenses of the Debtor. I believe that immediate authorization to use Cash Collateral will enable the Debtor to stabilize its operations in the immediate term, while also allowing the Debtor to pursue an exit strategy and potential reorganization in the Chapter 11 Case. Access to Cash Collateral is vital to preserving the value of the Debtor's estate and to maximizing the likelihood of a value-maximizing reorganization.

10. Based on current projections and estimates, I believe that the Debtor's ability to access Cash Collateral will provide sufficient liquidity to support the Debtor's working capital

needs and to operate in Chapter 11. Absent access to Cash Collateral, the Debtor would be forced into immediate liquidation of its Standale location.

11. The Debtor, with the assistance of Fort Dearborn Partners, prepared an initial 4-week budget based on the Debtor's projected postpetition cash needs. The Budget is attached as Exhibit B to the Cash Collateral Motion. In preparing the Budget, Fort Dearborn Partners worked closely with the Debtor's management and the Debtor's other professional advisors. The Budget contains line items for each category of cash flow anticipated to be received or disbursed during the identified period. I believe that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of the Debtor's business for the period set forth in the Budget. Further, I believe that the Budget establishes that the Debtor will have adequate liquidity during the identified period to maintain operations and administer its case.

12. Based on my experience and involvement in the consideration and negotiation of the use of Cash Collateral, I believe that the authorization to use Cash Collateral is the best available option, in the best interest of the Debtor's estate and stakeholders, and is necessary and appropriate under the circumstances. The terms of the Interim Order are the product of arm's-length negotiations. In light of the circumstances and the Debtor's urgent need for immediate liquidity and postpetition funding for this Chapter 11 Case, the Debtor should be authorized to use Cash Collateral.

13. I believe that access to Cash Collateral will ensure the Debtor has sufficient funds to preserve and maximize the value of its estate, pursue its reorganization goals in the interim period, and responsibly administer this Chapter 11 Case throughout the period that the Debtor expects will be necessary to implement and effectuate its restructuring efforts. I believe that entry of the Interim Order on an interim basis pending the Final Hearing will enable the Debtor to

preserve and maximize value and avoid immediate and irreparable harm and prejudice to its estate and all parties in interest, pending the Final Hearing.

I declare under penalty of perjury under 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 18, 2026

Kevin W. Cleary

Kevin Cleary
Chief Restructuring Officer