**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| MERITAGE HOSPITALITY GROUP INC., *et al.*,[1] | ) | Case No. 26-02947 (JWB) |
| Debtors. | ) | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING PAYMENT OF PREPETITION CREDIT CARD OBLIGATIONS, (II) GRANTING RELIEF FROM THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (the "Motion").

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit B** (the "Order"), pursuant to sections 105(a), 362(d), 363(b), 363(c), 363(e), and 506(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Western District of Michigan (the "Local Rules"): (a) authorizing Debtor Meritage Hospitality Group Inc. ("MHG") to pay approximately $37,458.71 in outstanding prepetition credit card and related obligations from funds held as collateral by Wells Fargo Bank, National Association ("Wells Fargo") in a segregated deposit

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Meritage Hospitality Group Inc. (0460); MHG Food Service, Inc. (5926); OCM Development, LLC (7384); Wen Carolinas, LLC (3792); Wen Georgia, LLC (7369); Wen Ohio, LLC (5959); Wen Oklahoma, LLC (8802); Wen South, LLC (1229); Wen Tennessee, LLC (2477); Wen Virginia, LLC (2840); WM Limited Partnership-1998 (9989); RES Management, LLC (9105); Inspired By Opportunity, LLC (3681); Uncommon Hospitality, LLC (8858); and Chicken Ventures, LLC (7215). The corporate headquarters and the mailing address for the Debtors is 45 Ottawa Ave SW, Suite 600, Grand Rapids, MI 49503.

account; (b) granting relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code to the extent necessary to authorize such payment; and (c) granting related relief.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Western District of Michigan (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 362(d), 363(b), 363(c), 363(e), and 506(a) of the Bankruptcy Code, Bankruptcy Rules 4001, 6004, and 9014, and Local Rules 4001-1, 4001-2, 4001-3, and 9013.

**Background**

5. On September 17, 2026 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases (the "Chapter 11 Cases") are being jointly administered at Case No. 26-02947.

6. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On September 30, 2026, the Office of the United States Trustee for the Western District of Michigan (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

8. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the *Debtors' Chapter 11 Cases, is set forth in the Declaration of Kevin Cleary, Chief Restructuring Officer of Meritage Hospitality Group, Inc., in Support of Debtors'*

*Chapter 11 Petitions and First Day Motions* [Docket No. 34] (the "First Day Declaration"), which is fully incorporated by reference herein.[2]

**a. The Security Agreement and the Deposit Account**

9. Prior to the Petition Date, on March 25, 2026, MHG and Wells Fargo entered into that certain Security Agreement: Card Obligations (the "Security Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**. Pursuant to Section 1 of the Security Agreement, MHG granted Wells Fargo a security interest in deposit account number ending in x0574 maintained with Wells Fargo (the "Account"), in the initial amount of $525,000.00, including interest earned thereon and all funds added thereto, and all renewals, replacements, and proceeds thereof (collectively, the "Collateral").

10. The Account was established for the specific purpose of securing MHG's obligations under credit card programs provided by Wells Fargo to or for the benefit of MHG. Section 2 of the Security Agreement defines the secured obligations as "all present and future Indebtedness of Debtor to Bank related to or arising under any credit card program (including, without limitation, any business card, commercial card or procurement card program) provided by Bank to Debtor or for the benefit of Debtor" (collectively, the "Secured Obligations").

11. Under Section 7 of the Security Agreement, Wells Fargo was appointed as MHG's attorney-in-fact with respect to the Account, with exclusive access to, and control over, the Account. Section 6(b)(ii) of the Security Agreement provides that MHG may not sell, hypothecate, or otherwise dispose of the Collateral, nor withdraw funds from the Account without Wells Fargo's permission. Section 7(b) further provides that, after the date of the Security Agreement, MHG may

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

not make debits to or withdrawals from the Account, and that Wells Fargo has exclusive access to the Account.

12. Section 5 of the Security Agreement contains MHG's representation and warranty that MHG is the owner of the Collateral and that the Collateral is free from any liens, adverse claims, or encumbrances of any kind, except the lien created by the Security Agreement and any lien otherwise agreed to by Wells Fargo in writing. Section 10 of the Security Agreement provides that upon an Event of Default (as defined in Section 9), Wells Fargo may liquidate the Collateral and apply the proceeds to payment of the Secured Obligations. Section 11 further provides that proceeds of the Collateral may be applied first to expenses of collection and then to the Secured Obligations.

13. The Security Agreement is governed by the laws of the State of Michigan. (Security Agreement, § 18.)

**b. The Outstanding Credit Card Obligations**

14. As of the Petition Date, MHG owed $32,708.51 in outstanding obligations under one or more credit card programs administered by Wells Fargo plus approximately $4,750 in legal fees and expenses which are payable by MHG under the Security Agreement (collectively, the "Credit Card Obligations"). These obligations constitute Secured Obligations as defined in Section 2 of the Security Agreement and are secured by the Collateral held in the Account. Because the Collateral consists solely of cash on deposit in the Account, the value of the Collateral is readily ascertainable and equals the Account balance.

15. The Account currently holds $525,000.00 more than sufficient to satisfy the Credit Card Obligations. The $525,000.00 initially deposited in the Account was specifically earmarked to secure MHG's Credit Card Obligations to Wells Fargo. After discussions between MHG and

Wells Fargo regarding continuation of the credit card program on a postpetition basis, Wells Fargo informed MHG that it did not intend to do so. As such, the parties have agreed, subject to Court approval, to terminate the credit card program, pay the outstanding Credit Card Obligations, and remit the balance of the Collateral to MHG.

**Basis for Relief Requested**

16. On the Petition Date, an automated payment of $108,258.36 for credit card charges was made to Wells from MHG's account. That payment occurred without Wells having knowledge of the bankruptcy, and may have occurred postpetition. Debtors also seek the Court's authorization for that payment to the extent it was made postpetition. Wells offered to return the payment, but doing so would merely increase the Credit Card Obligations to be paid from the Collateral.

17. By this Motion, the Debtors request entry of the Order: (a) authorizing MHG to use $37,458.51 of the Collateral held in the Account to pay the outstanding Credit Card Obligations owed to Wells Fargo, or, in the alternative, authorizing Wells Fargo to apply $37,458.51 from the Account toward satisfaction of the Credit Card Obligations; (b) granting relief from the automatic stay imposed by section 362(a) of the Bankruptcy Code, to the extent necessary, to permit the payment described in subparagraph (a) above; (c) authorize nunc pro tunc the Petition Date payment to Wells; and (d) granting related relief.

18. In accordance with Local Rule 4001-2(a), the Debtors state that (a) the adequate protection offered to Wells Fargo is described in paragraph 22 below, and (b) the Debtors' position is that the value of Wells Fargo's secured interest equals the cash balance of the Account, which exceeds the Credit Card Obligations, as described in paragraph 24 below. No appraisals or projections are pertinent to the Collateral, which consists solely of cash. The Cover Sheet for Motion to Use Cash Collateral or to Obtain Financing required by Local Rule 4001-2(b) is filed

with this Motion. In accordance with Local Rule 4001-3(a), a copy of the parties' agreement is reflected in the stipulated Order attached as **Exhibit B**.

## Legal Argument

### a. Authorization to Use Cash Collateral Under 11 U.S.C. § 363

19. Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use "cash collateral" (as defined in section 363(a)) unless each entity that has an interest in such cash collateral consents or the court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2). Section 363(a) defines "cash collateral" to include, inter alia, "cash, … deposit accounts, … or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a).

20. The funds in the Account constitute cash collateral because (a) they are funds held in a deposit account, (b) the estate has an interest in those funds as property of the estate under section 541 of the Bankruptcy Code, and (c) Wells Fargo holds a security interest in the funds pursuant to the Security Agreement. Accordingly, authorization from this Court is required for MHG to use the funds in the Account.

21. Section 363(b)(1) of the Bankruptcy Code provides that a trustee (or debtor in possession), after notice and a hearing, may use property of the estate outside the ordinary course of business. The Sixth Circuit has held that section 363(b)(1) of the Bankruptcy Code gives bankruptcy courts the authority to approve non-ordinary course, pre-confirmation transactions if they serve "a sound business purpose." *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Murray Metallurgical Coal Holdings, LLC*, 613 B.R. 442, 450 (Bankr. S.D. Ohio 2020).

22. Here, MHG's use of $37,458.51 from the Account to pay the Credit Card Obligations satisfies the business-judgment standard for several reasons. First, the funds in the

Account were specifically earmarked and deposited to secure the very obligations MHG seeks to pay. The Account was established under the Security Agreement for the sole purpose of collateralizing MHG's credit card obligations to Wells Fargo. Second, the payment of the Credit Card Obligations from the Account is consistent with the express terms of the Security Agreement. Section 10 authorizes Wells Fargo to liquidate the Collateral and apply the proceeds to the Secured Obligations upon an Event of Default, and Section 11 governs the application of proceeds to the Secured Obligations. Third, the payment will not prejudice unsecured creditors or the estates because the funds in the Account are subject to Wells Fargo's perfected security interest and are not available for distribution to general unsecured creditors. Finally, the return of the remaining funds will benefit the estates because the balance in the Account can be repurposed for other uses that benefit the Chapter 11 Cases.

23. Section 363(e) of the Bankruptcy Code requires that the court condition the use of cash collateral as is necessary to provide adequate protection of the secured creditor's interest. 11 U.S.C. § 363(e). Here, Wells Fargo is adequately protected because: (a) the funds in question were specifically deposited to secure the Credit Card Obligations that MHG proposes to pay; and (b) the proposed payment will reduce Wells Fargo's fully secured claim, as determined under section 506(a), by the same amount as the reduction in Collateral, resulting in no diminution of Wells Fargo's position.

**b. Wells Fargo Holds a Fully Secured Claim Under 11 U.S.C. § 506(a)**

24. Section 506(a)(1) of the Bankruptcy Code provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property" and is an unsecured claim to the extent the value of such interest is less than the amount of the allowed

claim. 11 U.S.C. § 506(a)(1). Such value "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property." *Id*.

25. No valuation dispute or bifurcation of Wells Fargo's claim is presented here. The Collateral consists exclusively of cash on deposit in the Account, in which Wells Fargo holds a security interest perfected by control because Wells Fargo is the depositary bank. *See* Mich. Comp. Laws §§ 440.9104(1)(a), 440.9314(1). The value of the Collateral is therefore its cash balance, which exceeds the Credit Card Obligations by $487,541.49. Accordingly, Wells Fargo holds a fully secured claim under section 506(a) in the amount of the Credit Card Obligations, and no portion of its claim is unsecured.

**c. <u>Relief from the Automatic Stay Under 11 U.S.C. § 362(d)</u>**

26. Section 362(a) of the Bankruptcy Code imposes an automatic stay against, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). To the extent that the proposed payment from the Account may implicate the automatic stay, the Debtors seek relief from the stay pursuant to section 362(d).

27. Section 362(d)(1) provides that the court shall grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). Cause exists here for several independent reasons. First, the funds in the Account are specifically earmarked as collateral for the Credit Card Obligations. The Account was established under the Security Agreement solely to secure these obligations, and Wells Fargo holds a perfected security interest in the Account. Second, MHG's estate will not be harmed by the proposed payment. The funds were always designated and segregated to secure the Credit Card Obligations. Releasing $37,458.51 to satisfy the obligations they were intended to secure does not

diminish the estate's resources. Finally, Wells Fargo, as a secured creditor, holds exclusive control over the Account pursuant to Section 7 of the Security Agreement, and is authorized under Section 10 to liquidate the Collateral and apply proceeds to the Secured Obligations upon an Event of Default. Granting stay relief that permits the contemplated payment merely effectuates the parties' prepetition contractual arrangement. The Court should grant relief from the automatic stay where collateral is sought to be applied to the obligations it was designated to secure and the parties are in agreement.

**d. <u>The Court's General Equitable Authority Under 11 U.S.C. § 105(a)</u>**

28. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The relief requested herein is consistent with the purposes of the Bankruptcy Code. Authorizing the payment of prepetition Credit Card Obligations from funds specifically earmarked and pledged as collateral for those obligations is equitable, furthers the efficient administration of the Chapter 11 Cases, and does not prejudice the rights of any party in interest.

## <u>Notice</u>

29. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) counsel to the Committee; (c) Wells Fargo; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) counsel to the Debtors' prepetition lenders; (f) the Office of the United States Attorney for the Western District of Michigan; (g) the state attorneys general for states in which the Debtors conduct business; (h) the Internal Revenue Service; (i) OTC Markets Group; (j) the Environmental Protection Agency; (k) other governmental agencies having a regulatory or statutory interest in these cases; (l) Quality Is Our Recipe, LLC; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002. In accordance with Local Rules 4001-3(b) and 9013(c), the Debtors will

serve this Motion, the agreement reflected in the proposed Order, the proposed Order, and a notice providing parties 14 days from the date of service to file and serve a response or request for hearing, and will file a certificate of service. In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

October 19, 2026

Respectfully submitted,

*/s/ Scott N. Opincar*

**MCDONALD HOPKINS LLC**
Scott N. Opincar
Michael J. Kaczka
Maria G. Carr (admitted *pro hac vice*)
600 Superior Ave. East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Email: sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com

*Counsel for the Debtors*
*and Debtors in Possession*