**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MERITAGE HOSPITALITY GROUP INC., *et al.*,[1] | ) | Case No. 26-02947 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' SEVENTH OMNIBUS MOTION FOR ENTRY OF ORDER, AUTHORIZING PROCEDURES REGARDING AND REJECTION OF CERTAIN (A) UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (B) EXECUTORY CONTRACTS, EFFECTIVE AS OF CERTAIN DATES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion (the "Motion"):

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "Proposed Order"), (i) authorizing certain procedures regarding the Debtors' potential closure of at least twenty (20) but no more than sixty (60) store locations that are EBITDA negative or deemed to have a negative value (the "Potential Closed Stores"); (ii) authorizing, but not directing, the Debtors to reject, effective as of the applicable Rejection Date (as defined below), (a) unexpired leases of nonresidential real property relating to the Potential Closed Stores, including, without limitation, any amendments, modifications, subleases, termination agreements, or other ancillary documents related thereto (the "Store Leases"), and (b) executory contracts relating to the Potential Closed Stores, including franchise agreements (the "Store Contracts" and, together with the Store

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Meritage Hospitality Group Inc. (0460); MHG Food Service, Inc. (5926); OCM Development, LLC (7384); Wen Carolinas, LLC (3792); Wen Georgia, LLC (7369); Wen Ohio, LLC (5959); Wen Oklahoma, LLC (8802); Wen South, LLC (1229); Wen Tennessee, LLC (2477); Wen Virginia, LLC (2840); WM Limited Partnership-1998 (9989); RES Management, LLC (9105); Inspired By Opportunity, LLC (3681); Uncommon Hospitality, LLC (8858); and Chicken Ventures, LLC (7215). The corporate headquarters and the mailing address for the Debtors is 45 Ottawa Ave SW Suite 600, Grand Rapids, MI 49503.

Leases, the "Store Agreements"), in each case only to the extent the Debtors designate such Store Agreement for rejection in a notice, with a proposed order, filed on one of the following dates: October 30, 2026 (the "First Rejection Date"), November 6, 2026 (the "Second Rejection Date"), and November 13, 2026 (the "Third Rejection Date" and, together with the First Rejection Date and the Second Rejection Date, the "Rejection Dates") (each such notice, a "Rejection Notice"), with Store Leases listed on **Schedule 1** and Store Contracts listed on **Schedule 2** to such Rejection Notice. Store Leases and Store Contracts that are identified in a Rejection Notice are referred to herein as the "Rejected Leases" and the "Rejected Contracts," respectively (and, collectively, the "Rejected Agreements"). The Debtors intend that the Potential Closed Stores will close on the relevant Rejection Date consistent with the schedules required by the *Interim Order (i) Authorizing Interim Use of Cash Collateral, (ii) Granting Adequate Protection and Related Relief and (iii) Scheduling a Final Hearing* [Docket No. 103] and the *Second Interim Order (i) Authorizing Interim Use of Cash Collateral, (ii) Granting Adequate Protection and Related Relief and (iii) Scheduling a Final Hearing* [Docket No. 256] (collectively, the "City National Bank Cash Collateral Orders").

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Western District of Michigan (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 365, and 554 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004, 6006, and 6007 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013 of the Local Bankruptcy Rules for the Western District of Michigan (the "Local Rules").

**Background**

5. On September 17, 2026 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases (the "Chapter 11 Cases") are being jointly administered at Case No. 26-02947.

6. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On September 30, 2026, the U.S. Trustee appointed the official committee of unsecured creditors (the "Committee") [Docket No. 141].

8. A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' Chapter 11 Cases, is set forth in the *Declaration of Kevin Cleary, Chief Restructuring Officer of Meritage Hospitality Group Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 34] (the "First Day Declaration"), which is fully incorporated by reference herein.[2]

**I. The Rejected Agreements**

9. The Debtors are a large franchisee operation which primarily operate Wendy's franchised restaurant locations throughout the United States. The Debtors operate a substantial majority of their restaurant locations pursuant to real property lease agreements between the Debtors and the applicable landlords and franchise agreements (the "Franchise Agreements") with Quality Is Our Recipe, LLC (Wendy's International) ("QIOR"). After careful review, the Debtors

---

[2] Capitalized terms used but not otherwise defined in this Motion have the meanings ascribed to them in the First Day Declaration.

have determined that the Debtors' locations they lease pursuant to the Rejected Leases (collectively, the "Rejected Premises") relating to the Potential Closed Stores will be, as of the relevant Rejection Date, no longer necessary for their business operations, are not beneficial to their estates, and the Rejected Leases will subject the Debtors to unnecessary and burdensome rent and related liabilities if they continue past the relevant Rejection Date.

10. As contemplated in the City National Bank Cash Collateral Orders, the Debtors previously closed certain stores after the Petition Date,[3] and are authorized and required to close at least twenty (20) but no more than sixty (60) store locations that are EBITDA negative or deemed to have a negative value pursuant to the following schedule: (i) at least five (5) and no more than fifteen (15) stores by October 23, 2026, (ii) at least five (5) and no more than fifteen (15) stores by October 30, 2026, (iii) at least five (5) and no more than fifteen (15) stores by November 6, 2026, and (iv) at least five (5) and no more than fifteen (15) stores by November 13, 2026, unless City National Bank, as administrative agent, otherwise agrees in writing to modify the foregoing schedule and with prior written notice to the Official Committee of Unsecured Creditors.

11. City National Bank has required such closures as additional adequate protection in exchange for the Debtors' use of cash collateral. Therefore, the Debtors file this Motion to seek authority, but not direction, to reject the Store Agreements as designated in a Rejection Notice, effective as of the relevant Rejection Date, and submit that such rejections are an appropriate exercise of their business judgment and in the best interest of their estates. As of the date of the filing of this Motion, the specific stores closing on each Rejection Date are to be determined based

---

[3] The Debtors previously closed approximately thirty other locations and moved to reject the related leases and contracts on September 25, 2026, October 2, 2026, October 9, 2026, and October 16, 2026, consistent with this schedule. *See* Docket Nos. 121, 154, 208, and 266.

on the Debtors' business judgment in consultation with their lenders, and the specific Store Agreements to be rejected on each Rejection Date will be listed in the Rejection Notice filed on that Rejection Date.

12. In addition, the Debtors have identified certain contracts, including franchise agreements relating to the Potential Closed Stores, that are no longer necessary for their go-forward business operations as of the relevant Rejection Date. Maintaining these franchise agreements would subject the Debtors to ongoing obligations, fees, and other liabilities for locations that are no longer operational. The Debtors have determined that rejecting these agreements as of the relevant Rejection Date is a sound exercise of their business judgment and in the best interests of their estates. As a result, the Debtors have determined that maintaining the Rejected Contracts after the date on which the relevant Potential Closed Store(s) close would be burdensome to their estates.

13. The Debtors are not obligated to close and reject the lease agreement, franchise agreement, or any other contract related to any specific Potential Closed Store as of the date of the filing of this Motion. The Debtors reserve the right to add to or remove stores from the list of Potential Closed Stores in their sound business judgment. If a store is removed from the list of Potential Closed Stores, or is not identified in any Rejection Notice, the related Store Agreements will not be Rejected Agreements and will remain unaffected by the Proposed Order. The Debtors will exercise that judgment in consultation with their advisors, and will provide the appropriate notice to the Committee, the United States Trustee, and City National Bank, in its capacity as administrative agent, as set forth in the City National Bank Cash Collateral Orders, and consistent with the Debtors' fiduciary duties to their estates and stakeholders.

14. Instead of closing any Potential Closed Store, the Debtors may instead keep operating the store, assume or assign the related lease, pursue a going-concern sale, or take any other action they believe will maximize the value of their estates, subject to any required approval of the Court. The Debtors' decision not to close any store will not be treated as (a) an admission, waiver, or election of remedies by the Debtors, (b) a breach of, or default under, any lease, agreement, or order of this Court, or (c) a basis for any claim against the Debtors or their estates. The Debtors reserve all rights under section 363 of the Bankruptcy Code and other applicable law for any store.

## Basis For Relief

### A. Rejection of the Rejected Agreements Is a Sound Exercise of the Debtors' Business Judgment

15. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) (superseded by statute on other grounds). "Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 373 (2019).

16. Generally, a bankruptcy court reviews a debtor's decision to assume or reject an executory contract under the deferential "business judgment" standard. *See In re Beare Co.*, 177 B.R. 879, 882 (Bankr. W.D. Tenn. 1994); *see also In re Federated Dept. Stores, Inc.*, 131 B.R. 808, 811 (Bankr. S.D. Ohio 1991) ("Courts traditionally have applied the business judgment

standard in determining whether to authorize the rejection of executory contracts and unexpired leases"); *see also In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

17. The business-judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor in possession's business judgment to reject a lease. *See, e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

18. Upon finding that a debtor has exercised its sound business judgment in determining that rejection of the rejected contracts and leases is in the best interests of the debtor and its estate, a court should approve the proposed rejections under section 365(a) of the Bankruptcy Code. *See Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc.*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982) ("Court approval of a debtor in possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the

Bankruptcy Code, and particularly of 11 U.S.C. § 365."); *see also In re ASPC Corp.*, 601 B.R. 766, 809 (Bankr. S.D. Ohio 2019); *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the rejection of an executory contract or unexpired lease. *See In re Farrar McWill, Inc.*, 26 B.R. 313, 315 (Bankr. W.D. Ky. 1982).

19. Here, the Debtors' rejection of the burdensome Rejected Leases and the Rejected Contracts relating to the Potential Closed Stores is a sound exercise of their business judgment and in the best interests of their estates. The Rejected Leases are lease agreements for certain restaurant locations that the Debtors will no longer occupy or use in the course of their businesses as of the relevant Rejection Dates. In other words, after the relevant Rejection Dates, the Rejected Leases provide no benefit to the Debtors and their estates, while subjecting the Debtors to burdensome rent and related liabilities should they not be rejected. The Franchise Agreements relating to the Potential Closed Stores subject the Debtors to ongoing obligations and fees for locations that are no longer operational after the relevant Rejection Dates, and the services provided to the Debtors under such contracts will no longer be necessary to their business operations. Absent rejection on the relevant Rejection Date, the Debtors and their estates would continue to incur administrative costs under the Rejected Agreements in exchange for no meaningful benefits.

**B. The Court Should Deem the Rejected Agreements Rejected Effective as of the Relevant Rejection Date.**

20. The Debtors' rejection of the Rejected Agreements should be approved effective as of the First Rejection Date, the Second Rejection Date, or the Third Rejection Date, subject to the Debtors providing appropriate notice to the counterparties to such agreements on the relevant

Rejection Dates pursuant to a notice and proposed order filed on the relevant Rejection Dates. Pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, bankruptcy courts may grant retroactive rejection of an executory contract or unexpired lease based on a balancing of the equities of the case. *See, e.g.*, *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection); *Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1028 (1st Cir. 1995) (holding that, with respect to lease rejection pursuant to section 365 of the Bankruptcy Code, "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"); *In re Stonebridge Techs., Inc.*, 430 F.3d 260, 273 (5th Cir. 2005) ("[W]e note that most courts have held that lease rejection may be retroactively applied.").

21. Moreover, courts permit retroactive rejection when retroactive rejection would allow a debtor to avoid "unnecessary administrative costs for Contracts and the Leases that do not provide any benefits to the Debtor and its estate," *In re SVB Fin. Grp.*, Case No. 23-10367 (MG) (Bankr. S.D.N.Y. May 17, 2023) [Docket No. 249], and also when the non-debtor party to the contract or lease was given "unequivocal notice of [the debtor's] intent to reject." *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003).

22. Courts in this circuit have granted retroactive rejection of executory contracts or unexpired leases. *See, e.g.*, *In re Artemis Laser & Vein Center, LLC*, Case No. 14-55300 (Bankr. S.D. Ohio Sept. 26, 2014) [Docket No. 71] (ordering that the rejection was effective as of the petition date, which was approximately one month prior to the date the motion was filed); *In re Volunteer Energy Services, Inc.*, Case No. 22-50804 (Bankr. S.D. Ohio April 26, 2022) [Docket

No. 242] (ordering that the rejection was effective as of the date the rejection motion was filed, which was approximately one month prior to the entry of the order authorizing rejection).

23. Here, for the following reasons, the balance of the equities favors the Debtors' rejection of the Rejected Agreements effective as of the relevant Rejection Date. *First*, absent rejection effective as of the relevant Rejection Date, the Debtors would incur unnecessary administrative charges for Franchise Agreements, contracts, and leases that are not necessary to their business operations or chapter 11 efforts. As discussed, as of the relevant Rejection Date, the Rejected Premises will be closed restaurant locations and will generate no further revenue or benefits for the Debtors. Moreover, the Franchise Agreements related to closed locations will no longer be necessary. Requiring the Debtors' continued performance under the Rejected Agreements after the relevant Rejection Date would impose administrative costs on the Debtors and their estates in exchange for no meaningful benefits.

24. *Second*, the Debtors have provided or will provide the counterparties to the Rejected Agreements with unequivocal notice of their intent to reject the agreements as of the relevant Rejection Date. Specifically, the Debtors filed this Motion and will serve it on the affected counterparties (QIOR and each of the landlords for the Potential Closed Stores) and/or their agents or representatives by first class mail and/or electronic mail, as applicable, in accordance with applicable rules. Additionally, the Debtors will file a notice and proposed order relating to the specific Rejected Agreements being rejected on the relevant Rejection Dates, and will concurrently send communications to such counterparties by electronic mail, thereby advising such counterparty that the Debtors intend to reject the Rejected Agreements effective as of the relevant Rejection Date. Moreover, with respect to the Rejected Leases, on the relevant Rejection Date, the Debtors will relinquish the keys, key cards or passcodes to the Rejected Premises to the applicable

landlords and indicate to the landlords that they were surrendering possession of the Rejected Premises.

**C. The Motion Satisfies the Requirements of Bankruptcy Rules 6006(e) and 6006(f).**

25. Under Bankruptcy Rule 6006(e)(2), a debtor may join requests for authority to reject multiple executory contracts or unexpired leases in one motion, subject to Rule 6006(f). *See* Fed. R. Bankr. P. 6006(e)(2). Motions to assume or reject multiple executory contracts or unexpired leases must satisfy six procedural requirements, namely, they must:

1. state in a conspicuous place that the parties' names and their contracts or leases are listed in the motion;
2. list parties alphabetically and identify the corresponding contract or lease;
3. specify the terms, including how a default will be cured, for each requested assumption or assignment;
4. specify the terms, including the assignee's identity and the adequate assurance of future performance by each assignee, for each requested assignment;
5. be numbered consecutively with other omnibus motions to reject, assume, or assign executory contracts or unexpired leases; and
6. be limited to no more than 100 executory contracts or unexpired leases.

Fed. R. Bankr. P. 6006(f). Each notice filed on a Rejection Date will state in a conspicuous place that the counterparties' names and their Rejected Agreements are listed therein, and will list such counterparties alphabetically and identify the corresponding Rejected Agreement. This Motion, together with the schedules of Rejected Agreements to be filed with the specific Rejected Agreements to be rejected on the relevant Rejection Dates attached to the proposed order filed on the relevant Rejection Dates, satisfies the procedural requirements of Bankruptcy Rule 6006(f).[4] Accordingly, the omnibus rejection of the Rejected Agreements should be approved.

---

[4] Bankruptcy Rules 6006(f)(3) and 6006(f)(4) are inapplicable to the relief requested in this Motion because the Debtors do not seek to assume any of the contracts, franchise agreements, or leases listed on the schedules of Rejected Agreements.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

26. The Debtors request that the Court enter an order providing that notice of the relief requested satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Notice**

27. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the Western District of Michigan; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Official Committee of Unsecured Creditors; (d) counsel to the Debtors' prepetition lenders; (e) the Office of the United States Attorney for the Western District of Michigan; (f) the state attorneys general for states in which the Debtors conduct business; (g) the Internal Revenue Service; (h) OTC Markets Group; (i) the Environmental Protection Agency; (j) other governmental agencies having a regulatory or statutory interest in these cases; (k) Quality Is Our Recipe, LLC; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

October 23, 2026

Respectfully submitted,

*/s/ Scott N. Opincar*

**MCDONALD HOPKINS LLC**
Scott N. Opincar
Michael J. Kaczka
Maria G. Carr (admitted *pro hac vice*)
600 Superior Ave. East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Email: sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com

*Counsel for the Debtors*
*and Debtors in Possession*