**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In Re:<br>MERITAGE HOSPITALITY GROUP INC., *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 26-02947 (JWB)<br>(Jointly Administered) |

**LANDLORDS' LIMITED OBJECTION**
**TO DEBTORS' SEVENTH OMNIBUS MOTION FOR**
**ENTRY OF ORDER AUTHORIZING REJECTION OF CERTAIN**
**(A) UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**
**AND (B) EXECUTORY CONTACTS, EFFECTIVE AS OF CERTAIN DATES**

553 Jacksonville Holding LLC and the Patrick and Jennifer Caughey Family Trust Dated November 6, 1995, (together, the "Landlords") files this limited objection and reservation of rights (the "Objection") to the Debtors' *Seventh Omnibus Motion for Entry of Order, Authorizing Rejection of Certain (A) Unexpired Leases of Nonresidential Real Property and (B) Executory Contracts, Effective as of Certain Dates* [Docket No. 331] (the "Rejection Procedures Motion"), and in support of the Objection, the Landlords respectfully state as follows:

**BACKGROUND**

1. On September 17, 2026 (the "Petition Date"), the Debtors commenced the above-captions jointly administered voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Meritage Hospitality Group Inc. (0460); MHG Food Service, Inc. (5926); OCM Development, LLC (7384); Wen Carolinas, LLC (3792); Wen Georgia, LLC (7369); Wen Ohio, LLC; (5959); Wen Oklahoma, LLC (8802); Wen South, LLC (1229); Wen Tennessee, LLC (2477); Wen Virginia, LLC (2840); WM Limited Partnership-1998 (9989); RES Management, LLC (9105); Inspired by Opportunity, LLC (3681); Uncommon Hospitality, LLC (8858); and Chicken Ventures, LLC (7215). The corporate headquarters and the mailing address for the Debtors is 45 Ottawa Ave SW, Grand Rapids, MI 49503.

2. Prior to the Petition Date, the Landlords and certain of the Debtors were parties to certain unexpired leases for the Debtors' operation of restaurants (the "Leases").

3. After the Petition Date, as contemplated by the City National Bank cash collateral orders [Docket No. 256], the Debtors are authorized and required to close at least twenty (20) but no more than sixty (60) store locations that are EBITDA negative or deemed to have a negative value pursuant to the following schedule: (i) at least five (5) and no more than fifteen (15) stores by October 23, 2026, (ii) at least five (5) and no more than fifteen (15) stores by October 30, 2026, (iii) at least five (5) and no more than fifteen (15) stores by November 6, 2026, and (iv) at least five (5) and no more than fifteen (15) stores by November 13, 2026.

4. On October 23, 2026, the Debtors filed the Rejection Procedures Motion requesting, among other things, procedures for rejecting Leases retroactive to the date of the corresponding Rejection Notice's filing.[2]

5. However, the Rejection Procedures Motion itself does not contain a list of Leases that the Debtors' intend to reject. Rather, at the time of filing this Objection, the Landlords must wait for the filing of both the November 6, 2026, and the November 13, 2026, Rejection Notices to determine if their Leases are subject to rejection.

6. The Rejection Procedures Motion objection deadline is November 6, 2026, which is the *same day* the November 6 Rejection Notice is scheduled to be issued and *seven days after* the November 13 Rejection Notice is scheduled to be issued. Consequently, the Landlords are placed in the predicament of objecting to the relief requested in the Rejection Procedures Motion prior to knowing if their Leases shall be subject to the proposed lease rejection procedures.

[2] Terms used but not herein defined shall have the meaning as set forth in the Rejection Procedures Motion.

## LIMITED OBJECTION

7. The Landlords do not object to the Debtors' request to reject the Leases *per se* pursuant to section 365(a) of the Bankruptcy Code. Rather, the Landlords object to the request to have the Leases rejected retroactive to the date of the filing of the Rejection Notice (if any). *Nunc pro tunc* relief is inappropriate.

8. *Nunc pro tunc* relief "allows a court sitting in equity to deem an action to have been taken as of a time when it should have been taken, but was not due to circumstances not attributable to the laches of the parties." *Gutierrez v. Gonzales*, 125 F. App'x 406, 411 n.7 (3d Cir. 2005). When analyzing *nunc pro tunc* rejection of nonresidential real property leases, courts generally focus on whether "parties have facilitated or hindered the prompt return of the leased premises to the landlord" in furtherance of the intended purposes of section 365(d). *In re At Home Corp.*, 392 F.3d 1064, 1070-71 (9th Cir. 2004) (approving retroactive relief where debtor never occupied the premises to begin with and scheduled the lease rejection hearing "virtually as soon as possible"); *see also In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (approving retroactive lease rejection because the debtor turned over the keys, vacated the premises, and served a motion to reject as soon as possible); *In re Player's Poker Club, Inc.*, 636 B.R. 811, 826 (Bkrtcy.C.D.Cal., 2022) (granting *nunc pro tunc* relief to date the lease rejection motion was filed (*i.e.* one day after the petition date) where, as of the lease rejection motion's filing, the debtor vacated the premises, performed a walk-through with the landlord, and turned over the keys). In other words, courts look to what actually happened to determine when the legal consequence of rejection should begin.

9. The determination of the effective date of rejection is significant because Bankruptcy Code Section 365(d)(3) provides in part that the "trustee shall timely perform **all the**

**obligations** of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property until such lease is assumed or rejected." (emphasis added). Postpetition lease obligations due and owing to the lessor, such as rent, are entitled to administrative expense until the lease is rejected. *See, e.g., In re Koenig Sporting Goods, Inc.*, 203 F.3d 986 (6th Cir. 2000) (affirming lower court decision that landlord was entitled to full amount of one months' rent as administrative priority claim where lease was rejected on the second day of the month).

10. The Debtors are cognizant of their Section 365(d)(3) obligations and states that "the Debtors will incur unnecessary charges" as the primary reason for retroactive rejection of its leases. However, Section 365(d)(3) was not enacted to out of concern for the debtor's interests in reducing its expenses, but rather to protect landlords from undue expense. Section 365(d)(3)'s chief purpose is to "remedy the 'long-term vacancy' of leased premises during protracted bankruptcy proceedings…. Together, §§ 365(d)(3) and (d)(4) operate to force the debtor-tenant to decide quickly whether to assume or reject an unexpired non-residential lease." *In re At Home Corp*. at 1070.

11. Indeed, the caselaw to which the Debtors rely on does permit *nunc pro tunc* relief, but only under "exceptional circumstances." *In re O'Neil Theatres, Inc.*, 257 B.R. 806, 808 (Bkrtcy.E.D.La.,2000) (granting *nunc pro tunc* relief where landlord exercised full dominion and control over the property prior to the lease rejection motion, which motion was filed three days after the petition date). However, upon further review, those cases offer little or no support to the Debtors' position that *nunc pro tunc* relief is appropriate here. The Debtors' cite *In re Volunteer Energy Services, Inc.*, where the court granted *nunc pro tunc* relief for the rejection of broker agreements, not for unexpired leases. Case No. 22-50804 (Bankr. S.D. Ohio April 26, 2022)

[Docket No. 242]. This case is not persuasive because debtors utilizing brokerage services do not typically hold dominion and control over a broker's property, which is typically the case in the context of leasing arrangements. The Debtors' also cite *In re Artemis Laser & Vein Center, LLC*, where that court granted rejections retroactive to the filing of the debtor's lease rejection motion. Case No. 14-55300 (Bankr. S.D. Ohio Sept. 26, 2014) [Docket No. 71]. However, that relief was only to the non-objecting *Artemis* landlords; the landlords who objected to such relief, particularly where the debtor failed to return control of one premises by the motion's filing, did not have their leases deemed rejected retroactive to the motion's filing.[3] *See id*. at docket numbers 65, 67, 90, and 94.

12. Moreover, the Debtors assert courts permit retroactive rejection when the debtor has given the landlord "unequivocal notice of [the debtor's] intent to reject," but that consideration is inextricably tied to whether there was unreasonable delay caused by the parties. Rejection Procedures Motion, ¶21; *see also In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bkrtcy.N.D.Tex.,2003) (reasoning that retroactive rejection was proper because the debtor gave unequivocal notice to landlord of its intent to reject prior to the debtor's filing of the lease rejection motion). The relationship between a debtor's unequivocal notice of rejection and undue delay arises from the debtor's control over the timing of the lease rejection motion. Courts have held that a debtor has control over the rejection date and should be held accountable for its decision of when to attempt to reject unexpired leases. *See, e.g., In re Koenig Sporting Goods, Inc.*, 203 F. 3d at 989-90 (holding that debtor was required to pay full rent that came due the day prior to rejection because "the debtor had complete control over the obligation").

---

[3] In *Artemis*, the objecting landlords agreed to stipulated orders that granted retroactive rejection, albeit to dates that were weeks following the debtor's lease rejection motion filing. *See Artemis*, Case No. 14-55300 [Docket Nos. 90 and 94].

13. Accordingly, should the Leases be subject to a Rejection Notice, the Court should not grant rejection of the Leases *nunc pro tunc*.

**RESERVATION OF RIGHTS**

14. Notwithstanding the relief sought in the Rejection Procedures Motion, the Landlords reserve all of their rights under their respective Leases and applicable law and the right to amend, supplement, and/or otherwise modify this Objection to raise other and further objections to the rejection of the Leases and to seek other or further relief, including without limitation, (i) seeking administrative expense status for any claims or obligations owing to the Landlords under the Leases, including, but not limited to rent, maintenance and repair obligations, and all other unperformed lease obligations as each has come due and will continue to come due, (ii) the Debtors' surrender of the Premises, (iii) the Debtors' identification and removal of the Retained Property, and (iv) abandonment of the Abandoned Property.[4] Filing this Objection is not and shall not be deemed or construed as a waiver by the Landlords of any rights under the Leases, the Bankruptcy Code, or applicable law.

[4] Terms used but not herein defined shall have the meaning as set forth in the Fifth Omnibus Rejection.

Respectfully submitted,

VARNUM LLP

By: *<u>/s/ Trent W. Huskey</u>*

Trent W. Huskey (P89417)
333 Bridge St. NW, Suite 1700
Grand Rapids, MI 49504
(616) 336-6132
twhuskey@varnumlaw.com

*Attorneys for 553 Jacksonville Holding LLC and the Patrick and Jennifer Caughey Family Trust Dated November 6, 1995*

Dated: November 6, 2026