**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re: | Chapter 11 |
| MERITAGE HOSPITALITY GROUP INC., et al.,[1] | Case No. 26-02947-jwb |
| | (Jointly Administered) |
| Debtors. | Honorable James W. Boyd |

______________________________________/

# LIMITED OBJECTION OF SUPREME PROPERTIES, LLC TO DEBTORS' FIFTH OMNIBUS MOTION FOR ENTRY OF ORDER AUTHORIZING REJECTION OF CERTAIN (A) UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (B) EXECUTORY CONTRACTS, EFFECTIVE AS OF OCTOBER 23, 2026

Supreme Properties, LLC ("Supreme" or the "Landlord"), by its undersigned counsel, submits this limited objection (the "Objection") to the *Debtors' Fifth Omnibus Motion for Entry of Order, Authorizing Rejection of Certain (A) Unexpired Leases of Nonresidential Real Property and (B) Executory Contracts, Effective as of October 23, 2026* [Docket No. 329] (the "Motion") and the proposed order attached to it (the "Proposed Order"). In support of this Objection, Supreme states as follows:

## PRELIMINARY STATEMENT

1. Supreme does not oppose the Debtors' decision to reject its lease. Supreme objects to the terms on which the Debtors propose to do so. The Debtors ask the Court to deem the lease between Supreme and Debtor Wen Georgia LLC, rejected effective October 23, 2026, which

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Meritage Hospitality Group Inc. (0460); MHG Food Service, Inc. (5926); OCM Development, LLC (7384); Wen Carolinas, LLC (3792); Wen Georgia, LLC (7369); Wen Ohio, LLC (5959); Wen Oklahoma, LLC (8802); Wen South, LLC (1229); Wen Tennessee, LLC (2477); Wen Virginia, LLC (2840); WM Limited Partnership-1998 (9989); RES Management, LLC (9105); Inspired By Opportunity, LLC (3681); Uncommon Hospitality, LLC (8858); and Chicken Ventures, LLC (7215). The corporate headquarters and the mailing address for the Debtors is 45 Ottawa Ave SW Suite 600, Grand Rapids, MI 49503.

would end their obligation under section 365(d)(3) of the Bankruptcy Code to timely perform as of that date. At the same time, the Proposed Order gives the Debtors up to ten days after the order is entered to decide which of their property they want to keep, and up to thirty days after entry to come back and remove it. The Debtors would get both the benefit of rejection as of the filing date and continued use of Supreme's premises as rent-free storage for at least a month after the order is entered, and possibly much longer depending on when the order is entered.

2. Courts may permit rejection effective before the order is entered only when the balance of the equities favors that result. The Motion relies on decisions that turn on whether the debtor has unequivocally surrendered the premises. A tenant that leaves its property in the premises and reserves the right to return and remove it has not unequivocally surrendered anything. Until the Debtors' property is gone, Supreme cannot relet, market, repair, or otherwise use the Premises. It cannot even safely dispose of the property the Debtors call abandoned, because it will not know which items the Debtors intend to retain until the selection period runs.

3. The Court should therefore (a) set the effective date of rejection of the Supreme Lease (defined below) as the date the Debtors actually surrender the Premises free of their property, or (b) at a minimum, condition any earlier effective date on the Debtors' payment, as an administrative expense, of use-and-occupancy charges at the lease rate through the date of actual surrender. The Court should also shorten and tighten the property-retrieval procedures and require the Debtors to pay the obligations that arose under the Supreme Lease between the Petition Date and the effective date of rejection.

## BACKGROUND

### A. The Chapter 11 Cases

4. On September 17, 2026 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are jointly administered

under Case No. 26-02947. The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

B. **The Supreme Lease**

5. Supreme is the landlord, and Debtor Wen Georgia, LLC is the tenant, under a lease of nonresidential real property for the restaurant known as Store #0119-Buford, located at 4365 Buford Drive, Buford, Georgia 30518 (the "Premises"), dated October 28, 2013, as amended by the First Amendment to Lease Agreement dated June 10, 2020 (the "Supreme Lease"). The Supreme Lease is listed as item No. 47 on Schedule 1 to the Proposed Order.

6. Under the Supreme Lease, the tenant must pay monthly base rent of $8,728.13 (adjusted every five years) plus real estate taxes, utilities, and insurance.

7. As of the date of this Objection, the Debtors have not paid the post-petition rent and other charges that came due under the Supreme Lease on November 1, 2026. As of the date of this Objection, the Debtors' furniture, fixtures, equipment, and other personal property remain at the Premises (the "Remaining Personal Property"). Debtor has not operated the Wendy's restaurant since at least October of 2025 but has not yet removed the Remaining Personal Property.

C. **The Motion and the Proposed Order**

8. On October 23, 2026 (the "Filing Date"), the Debtors filed the Motion. It asks the Court to authorize rejection leases for closed restaurant locations, including the Supreme Lease, effective as of the Filing Date.

9. The Debtors argue that the equities favor rejection effective as of the Filing Date because (a) absent that relief, they would incur unnecessary charges for leases that provide no benefit, and (b) they have given unequivocal notice of their intent to reject. Motion ¶¶ 19–20. They represent that they "vacated the Rejected Premises prior to the Petition Date and either have

already (or will do so on the date of the filing of this Motion) relinquished the keys, key cards or passcodes to the Rejected Premises to the applicable landlords." Motion ¶ 20.

10. Paragraph 3 of the Proposed Order provides that, to the extent possession of any premises has not been surrendered as of the Filing Date, the Debtors must surrender possession "by no later than the date this Order is entered." Proposed Order ¶ 3.

11. But paragraph 4 of the Proposed Order goes on to provide that the Debtors "shall (i) within 10 days beginning from the date of entry of this Order, select and identify any and all property of the Debtors located at the premises subject to the Rejected Leases that the Debtors intend to retain (the "Retained Property") . . . (ii) within 10 days beginning from the date of entry of this Order, provide written notice of any such Retained Property to the counterparty(ies) . . . and (iii) within 30 days beginning from the date of entry of this Order, remove such Retained Property from the Rejected Premises." Proposed Order ¶ 4. All other property is "deemed abandoned, effective as of the Filing Date," under section 554 of the Bankruptcy Code. *Id.*

12. The Proposed Order reserves landlords' rights to file claims for storage of Retained Property and disposal of Abandoned Property, and reserves administrative expense claims under sections 503(b)(1) and 365(d)(3) "during the period from and after the Petition Date through and including the date the applicable leased premises are actually surrendered." Proposed Order ¶¶ 4, 10. Nothing in the Motion or the Proposed Order, however, requires the Debtors to pay rent, use-and-occupancy charges, or any other amount for the period during which their property remains in the Premises after the Filing Date.

## OBJECTION

A. **Rejection Ordinarily Takes Effect on Court Approval, and the Debtors Bear the Burden of Showing That the Equities Support an Earlier Date.**

13. Section 365(a) authorizes a debtor in possession to reject an unexpired lease "subject to the court's approval." 11 U.S.C. § 365(a). Because court approval is a condition of rejection, rejection ordinarily takes effect when the Court approves it. Courts may approve rejection effective as of an earlier date, but only as an exercise of equitable discretion, and "should do so when the balance of equities preponderates in favor of such remediation." *Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. #1* (*In re Thinking Machs. Corp*.), 67 F.3d 1021, 1028 (1st Cir. 1995). The Debtors, as the parties seeking that relief, bear the burden of establishing that the equities support it.

14. The equities must be weighed against the backdrop of section 365(d)(3), which provides that the debtor "*shall* timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3) (emphasis added). Rejection effective before the order is entered cuts directly into that protection. It should be granted only when the landlord has actually gotten its property back and is not being asked to subsidize the debtor's continued use of it.

15. For that reason, the decisions on which the Debtors rely approve retroactive rejection where the debtor has unequivocally notified the landlord of its intent to reject *and* has relinquished the premises, so that the landlord is free to relet or otherwise use them. *See In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003); *see also In re Chi-Chi's, Inc.*, 305 B.R. 396 (Bankr. D. Del. 2004).

B. **The Debtors Have Not Unequivocally Surrendered the Premises, and the Proposed Order Shows They Do Not Intend To Until Weeks After It Is Entered.**

16. The Debtors' claim of surrender is contradicted by the terms of their own Proposed Order. Paragraph 3 says the Debtors will surrender possession by the date the order is entered. Paragraph 4 then lets them keep their property in the Premises and return to remove it for thirty more days. A tenant that leaves its property behind and reserves the right to come back for it has not surrendered possession in any practical sense. Returning the keys means little when the order gives the Debtors a court-ordered right of re-entry.

17. This is not a technical point. Until the Debtors' property is removed, Supreme cannot relet or market the Premises, cannot begin repairs or turnover work for a new tenant, and must continue to insure, secure, and maintain a building that holds the Debtors' equipment. The "abandonment" of the Debtors' remaining property "effective as of the Filing Date" does not help, because Supreme will not know which items the Debtors claim as Retained Property until the ten-day selection window closes. If Supreme disposes of anything before then, it risks claims by the Debtors that it disposed of Retained Property.

18. The time involved is real. The selection and removal periods run from entry of the order, not from the Filing Date. If the order is entered on November 10, 2026, the Debtors could wait until November 20, 2026 to make a decision as to whether to abandon or keep the Retained Property and then leave the Retained Property in the Premises until December 21, 2026 (December 20 is a Sunday), which is 60 days after the date on which they ask the Court to treat the Supreme Lease as rejected. During that entire period, the Debtors propose to pay nothing.

19. The Debtors' equitable justification does not apply in these circumstances. They argue that retroactive rejection prevents "unnecessary charges" for leases that provide "no meaningful benefits." Motion ¶ 19. But a lease that the Debtors are still using to store property

they have not yet decided whether to keep does provide a benefit to the estate. The Debtors may not shed their section 365(d)(3) obligations as of October 23, 2026 while keeping the use of the Premises for their own purposes. The Debtors have been out of the Premises since before the Petition Date (Motion ¶ 9), and they had months to decide which equipment was worth retrieving. Supreme should not bear the cost of the Debtors' delay.

20. Accordingly, the Court should deny rejection of the Supreme Lease effective as of the Filing Date. It should instead provide that the Supreme Lease is rejected effective as of the later of (a) entry of the order or (b) the date the Debtors have removed all Retained Property (and repair any damage caused from such removal as required under the Supreme Lease), left the Premises in broom clean condition, returned all means of access, and confirmed surrender in writing (or have confirmed in writing that they will retain no property) (the "Supreme Surrender Date").

C. **Alternatively, Any Earlier Effective Date Should Be Conditioned on Payment of Use and Occupancy Through the Supreme Surrender Date.**

21. If the Court is inclined to approve rejection of the Supreme Lease effective as of the Filing Date, it should condition that relief on the Debtors' payment for their continued use of the Premises. A debtor's post-rejection use and occupancy of leased premises for the benefit of the estate is an actual, necessary cost of preserving the estate under section 503(b)(1)(A). The reasonable value of that use is presumptively the rate the parties agreed to in the Supreme Lease.

22. The reservations of rights in paragraphs 4 and 10 of the Proposed Order are not a substitute. They preserve a claim but provide no payment, and they would require Supreme to file, prove, and collect an administrative claim later, in jointly administered cases involving the rejection of dozens of leases for closed stores. The equitable relief the Debtors request should be conditioned on the Debtors doing equity: paying Supreme for the period they actually occupy the

Premises with their property. The Court should therefore direct the Debtors to pay Supreme, as an allowed administrative expense, use-and-occupancy charges at the per diem rate under the Supreme Lease from the Filing Date through the Supreme Surrender Date, within five business days after the Supreme Surrender Date.

### D. The Property-Retrieval Deadlines Should Be Shortened and Subject to Reasonable Conditions.

23. Whatever effective date the Court sets, the ten-day selection and thirty-day removal periods are longer than these facts justify. The Debtors closed the Buford store before the Petition Date and have had ample time to inventory its contents. Supreme requests that, as to the Supreme Lease, the order require the Debtors to: (a) deliver written notice identifying any Retained Property to Supreme and its counsel by email within three business days after entry of the order; (b) remove all Retained Property within fourteen days after entry of the order; (c) give Supreme at least two business days' notice before any entry, and coordinate access with Supreme; (d) conduct any removal at the Debtors' sole cost through licensed and insured contractors, with evidence of insurance delivered to Supreme in advance; (e) repair any damage caused by removal; and (f) refrain from removing any fixtures, improvements, building systems, or other property that belongs to Supreme or becomes Supreme's property under the Supreme Lease or applicable law.

24. The Debtors should also be responsible for removing, or arranging for the removal of, any signage, trade dress, or other branded property that the Debtors or their franchisor require to be removed, and for notifying any third party that the Debtors know owns or claims an interest in property at the Premises, including equipment lessors and lienholders.

25. Abandonment of any property not timely identified and removed should be effective upon the earlier of the Supreme Surrender Date and the expiration of the removal deadline. Supreme should be free to use or dispose of that property without notice or liability to

the Debtors, their estates, or any third party claiming an interest in it, and without waiver of Supreme's right to assert a claim for the costs of removal, storage, and disposal.

E. **The Debtors Must Pay the Obligations That Arose Under the Supreme Lease Before the Effective Date of Rejection.**

26. Section 365(d)(3) requires the Debtors to timely perform all obligations arising under the Supreme Lease from the Petition Date until the lease is rejected. Rent of $8,728.13 came due under the Supreme Lease on November 1, 2026 and remains unpaid. Supreme requests that the order direct the Debtors to pay all obligations arising under the Supreme Lease from the Petition Date through the effective date of rejection within five business days after entry of the order.

## JOINDER IN OBJECTIONS OF OTHER LANDLORDS

27. Supreme joins in any objections to the Motion asserted by other landlords and contract counterparties.

## RESERVATION OF RIGHTS

28. Supreme reserves all rights, claims, and remedies under the Supreme Lease, the Bankruptcy Code, and applicable law, including (a) its claim for rejection damages, subject to section 502(b)(6) of the Bankruptcy Code; (b) its claims for administrative expenses under sections 365(d)(3) and 503(b), including for use and occupancy and for the costs of removal, storage, and disposal of property; (c) its rights with respect to any security deposit, letter of credit, guaranty, or other credit support; (d) its rights of setoff and recoupment; and (e) its right to supplement or amend this Objection, to conduct discovery, and to be heard at any hearing on the Motion. Nothing in this Objection waives any of those rights.

## CONCLUSION

WHEREFORE, Supreme respectfully requests that the Court (a) deny the Motion to the extent it seeks rejection of the Supreme Lease effective as of October 23, 2026, and instead provide that the Supreme Lease is rejected effective as of the Supreme Surrender Date; (b) alternatively, condition any earlier effective date on the Debtors' payment of use-and-occupancy charges at the Supreme Lease rate through the Supreme Surrender Date; (c) shorten and condition the property-retrieval procedures as set forth in this Objection; (d) direct the Debtors to pay all obligations arising under the Supreme Lease from the Petition Date through the Supreme Surrender Date; and (e) grant such other relief as is just.

Dated: November 6, 2026

Respectfully submitted,

**WARNER NORCROSS + JUDD LLP**

By: /s/Elisabeth M. Von Eitzen
Elisabeth M. Von Eitzen (P70183)
180 East Water Street, Suite 7000
Kalamazoo, Michigan 49007
269.276.8118
evoneitzen@wnj.com
*Counsel for Supreme Properties, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, I caused a true and correct copy of the foregoing Objection to be filed electronically with the Court using the CM/ECF system, which will send notification of such filing to all parties registered to receive electronic notice in these cases, and caused a copy to be served by electronic mail upon (a) counsel to the Debtors, McDonald Hopkins LLC, Attn: Scott N. Opincar (sopincar@mcdonaldhopkins.com), Michael J. Kaczka (mkaczka@mcdonaldhopkins.com), and Maria G. Carr (mcarr@mcdonaldhopkins.com); (b) counsel to the Buyer, DPA Attorneys at Law, Attn: Pooja Mehta, Esq. (pmehta@dpalaw.com); (c) the Office of the United States Trustee for the Western District of Michigan; and (d) counsel to the Official Committee of Unsecured Creditors.

**WARNER NORCROSS + JUDD LLP**

By: /s/Elisabeth M. Von Eitzen
Elisabeth M. Von Eitzen (P70183)
180 East Water Street, Suite 7000
Kalamazoo, Michigan 49007
269.276.8118
evoneitzen@wnj.com
*Counsel for Supreme Properties, LLC*