**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 26-02947-jwb |
| MERITAGE HOSPITALITY GROUP INC., et al.,[1] | (Jointly Administered) |
| Debtors. | Honorable James W. Boyd |

______________________________________/

**LIMITED OBJECTION OF WENDYS TALLAHASSEE, LLC TO DEBTORS' SEVENTH OMNIBUS MOTION FOR ENTRY OF ORDER AUTHORIZING REJECTION OF CERTAIN (A) UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (B) EXECUTORY CONTRACTS, EFFECTIVE AS OF CERTAIN DATES**

Wendys Tallahassee, LLC ("Wendys Tallahassee"), by its undersigned counsel, submits this limited objection (the "Objection") to the *Debtors' Seventh Omnibus Motion for Entry of Order, Authorizing Rejection of Certain (A) Unexpired Leases of Nonresidential Real Property and (B) Executory Contracts, Effective as of Certain Dates* [Docket No. 331] (the "Motion") and the proposed order attached to it (the "Proposed Order"). In support of this Objection, Landlord states as follows:

**PRELIMINARY STATEMENT**

1. Wendys Tallahassee does not oppose the Debtors' decision to reject leases by certain dates. Wendys Tallahassee objects to the terms on which the Debtors propose to do so. The

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Meritage Hospitality Group Inc. (0460); MHG Food Service, Inc. (5926); OCM Development, LLC (7384); Wen Carolinas, LLC (3792); Wen Georgia, LLC (7369); Wen Ohio, LLC (5959); Wen Oklahoma, LLC (8802); Wen South, LLC (1229); Wen Tennessee, LLC (2477); Wen Virginia, LLC (2840); WM Limited Partnership-1998 (9989); RES Management, LLC (9105); Inspired By Opportunity, LLC (3681); Uncommon Hospitality, LLC (8858); and Chicken Ventures, LLC (7215). The corporate headquarters and the mailing address for the Debtors is 45 Ottawa Ave SW Suite 600, Grand Rapids, MI 49503.

Proposed Order gives the Debtors up to ten days after a rejection date to decide which of their property they want to keep, and up to thirty days to come back and remove it. The Debtors would get both the benefit of rejection as of the rejection date and continued use of Wendys Tallahassee's premises as rent-free storage for at least a month.

2. Courts may permit rejection effective before the order is entered only when the balance of the equities favors that result. The Motion relies on decisions that turn on whether the debtor has unequivocally surrendered the premises. A tenant that leaves its property in the premises and reserves the right to return and remove it has not unequivocally surrendered anything. Until the Debtors' property is gone, Wendys Tallahassee cannot relet, market, repair, or otherwise use the Premises. It cannot even safely dispose of the property the Debtors call abandoned, because it will not know which items the Debtors intend to retain until the selection period runs.

3. The Court should therefore (a) set the effective date of rejection of any lease as the date the Debtors actually surrender the premises free of their property, or (b) at a minimum, condition any earlier effective date on the Debtors' payment, as an administrative expense, of use-and-occupancy charges at the lease rate through the date of actual surrender. The Court should also shorten and tighten the property-retrieval procedures and require the Debtors to pay the obligations that arose under the Landlord Lease (defined below) between the Petition Date and the effective date of rejection.

## BACKGROUND

### A. The Chapter 11 Cases

4. On September 17, 2026 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are jointly administered under Case No. 26-02947. The Debtors continue to operate their businesses and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

B. **The Landlord Lease**

5. Wendys Tallahassee is the landlord, and Debtor Wen South, LLC is the tenant, under a lease of nonresidential real property for the restaurant known as Store #150, located at 1828 North Monroe Street, Tallahassee, Florida (the "Premises"), dated August 29, 2023 (the "Landlord Lease").

C. **The Motion and the Proposed Order**

6. On October 23, 2026 (the "Filing Date"), the Debtors filed the Motion. The Motion requests that the Court approve procedures for rejecting leases retroactive to the date the Debtors file a rejection notice for such leases.

7. The Motion does not contain a list of leases it proposes to reject, other than to provide that it will give notice on October 30, November 6, and November 13. Unforuntaely, the deadline to object to the Motion is 5:00 p.m. on November 6—before Wendys Tallahassee would know whether the Landlord Lease is a lease Debtor intends to reject. Thus, Wendys Tallahassee is required to file this protective objection in the event the Debtors choose to reject the Landlord Lease under the procedures established by the Motion.

8. Paragraph 3 of the Proposed Order provides that, to the extent possession of any premises has not been surrendered as of the Rejection Date, the Debtors must surrender possession "by no later than ten days after the applicable Rejection Date." Proposed Order ¶ 3.

9. But paragraph 4 of the Proposed Order goes on to provide that the Debtors "shall (i) within 10 days beginning from the relevant Rejection Date, select and identify any and all property of the Debtors located at the premises subject to the Rejected Leases that the Debtors intend to retain (the "Retained Property") . . . (ii) within 10 days beginning from the relevant Rejection Date, provide written notice of any such Retained Property to the counterparty(ies) . . . and (iii) within 30 days beginning from the applicable Rejection Date, remove such Retained

Property from the Rejected Premises." Proposed Order ¶ 4. All other property is "deemed abandoned, effective as of the applicable Rejection Date," under section 554 of the Bankruptcy Code. *Id*.

10. Nothing in the Motion or the Proposed Order, however, requires the Debtors to pay rent, use-and-occupancy charges, or any other amount for the period during which their property remains in the Premises after the applicable Rejection Date.

## OBJECTION

### A. Rejection Ordinarily Takes Effect on Court Approval, and the Debtors Bear the Burden of Showing That the Equities Support an Earlier Date.

11. Section 365(a) authorizes a debtor in possession to reject an unexpired lease "subject to the court's approval." 11 U.S.C. § 365(a). Because court approval is a condition of rejection, rejection ordinarily takes effect when the Court approves it. Courts may approve rejection effective as of an earlier date, but only as an exercise of equitable discretion, and "should do so when the balance of equities preponderates in favor of such remediation." *Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. #1* (*In re Thinking Machs. Corp.*), 67 F.3d 1021, 1028 (1st Cir. 1995). The Debtors, as the parties seeking that relief, bear the burden of establishing that the equities support it.

12. The equities must be weighed against the backdrop of section 365(d)(3), which provides that the debtor "*shall* timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3) (emphasis added). Rejection effective before the order is entered cuts directly into that protection. <u>It should be granted only when the landlord has actually gotten its property back and is not being asked to subsidize the debtor's continued use of it.</u>

13. For that reason, the decisions on which the Debtors rely approve retroactive rejection where the debtor has unequivocally notified the landlord of its intent to reject *and* has relinquished the premises, so that the landlord is free to relet or otherwise use them. *See In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003); *see also In re Chi-Chi's, Inc.*, 305 B.R. 396 (Bankr. D. Del. 2004).

**B. The Debtors Are Not Required to Surrender the Premises Upon Rejection, and the Proposed Order Shows They Do Not Intend To Until Weeks After It Is Entered.**

14. The Debtors' claim of surrender is contradicted by the terms of their own Proposed Order. Paragraph 3 says the Debtors will surrender possession by the Rejection Date. Paragraph 4 then lets them keep their property in the premises and return to remove it for thirty more days. A tenant that leaves its property behind and reserves the right to come back for it has not surrendered possession in any practical sense. Returning the keys means little when the order gives the Debtors a court-ordered right of re-entry.

15. This is not a technical point. Until the Debtors' property is removed, an affected landlord cannot relet or market the premises, cannot begin repairs or turnover work for a new tenant, and must continue to insure, secure, and maintain a building that holds the Debtors' equipment. The "abandonment" of the Debtors' remaining property "effective as of the Rejection Date" does not help, because a landlord will not know which items the Debtors claim as Retained Property until the ten-day selection window closes. If a landlord disposes of anything before then, it risks claims by the Debtors that it disposed of Retained Property.

16. The time involved is real. The selection and removal periods run from entry of Rejection Date. If the Rejection Date is November 13, 2026, the Debtors could wait until November 23, 2026 to make a decision as to whether to abandon or keep the Retained Property

and then leave the Retained Property in the Premises until December 13, 2026. During that entire period, the Debtors would not be required to pay under the terms of the respective lease.

17. The Debtors' equitable justification does not apply in these circumstances. They argue that retroactive rejection prevents "unnecessary charges" for leases that provide "no meaningful benefits." Motion ¶ 19. But a lease that the Debtors are still using to store property they have not yet decided whether to keep does provide a benefit to the estate. The Debtors may not shed their section 365(d)(3) obligations while keeping the use of the premises for their own purposes. Landlords should not bear the cost of the Debtors' delay.

18. Accordingly, the Court should deny rejection of any lease effective as of the Rejection Date. It should instead provide that any lease is rejected effective as of the later of (a) entry of the order or (b) the date the Debtors have removed all Retained Property (and repair any damage caused from such removal as required under the leases), left the premises in broom clean condition, returned all means of access, and confirmed surrender in writing (or have confirmed in writing that they will retain no property) (the "Landlord Surrender Date").

### C. Alternatively, Any Earlier Effective Date Should Be Conditioned on Payment of Use and Occupancy Through the Landlord Surrender Date.

19. If the Court is inclined to approve rejection of the leases effective as of the Rejection Date, it should condition that relief on the Debtors' payment for their continued use of the premises. A debtor's post-rejection use and occupancy of leased premises for the benefit of the estate is an actual, necessary cost of preserving the estate under section 503(b)(1)(A). The reasonable value of that use is presumptively the rate the parties agreed to in the leases.

20. The reservations of rights in paragraphs 4 and 10 of the Proposed Order are not a substitute. They preserve a claim but provide no payment, and they would require a landlord to file, prove, and collect an administrative claim later. The equitable relief the Debtors request

should be conditioned on the Debtors doing equity: paying landlords for the period they actually occupy the premises with their property. The Court should therefore direct the Debtors to pay landlords, as an allowed administrative expense, use-and-occupancy charges at the per diem rate through the Landlord Surrender Date, within five business days after the Landlord Surrender Date.

D. **The Property-Retrieval Deadlines Should Be Shortened and Subject to Reasonable Conditions.**

21. Landlord requests that any order require the Debtors to: (a) remove all Retained Property within fourteen days after entry of the order; (b) give landlords at least two business days' notice before any entry, and coordinate access with landlords; (c) conduct any removal at the Debtors' sole cost through licensed and insured contractors, with evidence of insurance delivered to a landlord in advance; (e) repair any damage caused by removal; and (f) refrain from removing any fixtures, improvements, building systems, or other property that belongs to a landlord or becomes a landlord's property under the relevant leases or applicable law.

22. The Debtors should also be responsible for removing, or arranging for the removal of, any signage, trade dress, or other branded property that the Debtors or their franchisor require to be removed, and for notifying any third party that the Debtors know owns or claims an interest in property at the premises, including equipment lessors and lienholders.

23. Abandonment of any property not timely identified and removed should be effective upon the earlier of the Landlord Surrender Date and the expiration of the removal deadline. Landlord should be free to use or dispose of that property without notice or liability to the Debtors, their estates, or any third party claiming an interest in it, and without waiver of a landlord's right to assert a claim for the costs of removal, storage, and disposal.

## JOINDER OF OBJECTIONS OF OTHER LANDLORDS

24. Wendys Tallahassee joins in any objections to the Motion asserted by other landlords and counterparties.

## RESERVATION OF RIGHTS

25. Wendys Tallahassee reserves all rights, claims, and remedies under the Landlord Lease, the Bankruptcy Code, and applicable law, including (a) its claim for rejection damages, subject to section 502(b)(6) of the Bankruptcy Code; (b) its claims for administrative expenses under sections 365(d)(3) and 503(b), including for use and occupancy and for the costs of removal, storage, and disposal of property; (c) its rights with respect to any security deposit, letter of credit, guaranty, or other credit support; (d) its rights of setoff and recoupment; and (e) its right to supplement or amend this Objection, to conduct discovery, and to be heard at any hearing on the Motion. Nothing in this Objection waives any of those rights.

## CONCLUSION

WHEREFORE, Wendys Tallahassee respectfully requests that the Court (a) deny the Motion to the extent it seeks rejection of the Landlord Lease; (b) alternatively, condition any rejection on the Debtors' payment of use-and-occupancy charges at the Landlord Lease rate through the Landlord Surrender Date; (c) shorten and condition the property-retrieval procedures as set forth in this Objection; (d) direct the Debtors to pay all obligations arising under the Landlord Lease from the Petition Date through the Landlord Surrender Date; and (e) grant such other relief as is just.

Dated: November 6, 2026

Respectfully submitted,

**WARNER NORCROSS + JUDD LLP**

By: /s/Elisabeth M. Von Eitzen
Elisabeth M. Von Eitzen (P70183)
180 East Water Street, Suite 7000
Kalamazoo, Michigan 49007
269.276.8118
evoneitzen@wnj.com
*Counsel for Wendys Tallahassee, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I caused a true and correct copy of the foregoing Objection to be filed electronically with the Court using the CM/ECF system, which will send notification of such filing to all parties registered to receive electronic notice in these cases, and caused a copy to be served by electronic mail upon (a) counsel to the Debtors, McDonald Hopkins LLC, Attn: Scott N. Opincar (sopincar@mcdonaldhopkins.com), Michael J. Kaczka (mkaczka@mcdonaldhopkins.com), and Maria G. Carr (mcarr@mcdonaldhopkins.com); (b) counsel to the Buyer, DPA Attorneys at Law, Attn: Pooja Mehta, Esq. (pmehta@dpalaw.com); (c) the Office of the United States Trustee for the Western District of Michigan; and (d) counsel to the Official Committee of Unsecured Creditors.

**WARNER NORCROSS + JUDD LLP**

By: /s/Elisabeth M. Von Eitzen
Elisabeth M. Von Eitzen (P70183)
180 East Water Street, Suite 7000
Kalamazoo, Michigan 49007
269.276.8118
evoneitzen@wnj.com
*Counsel for Wendys Tallahassee, LLC*