**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| MERITAGE HOSPITALITY GROUP INC., *et al.*,[1] | ) | |
| | ) | Case No. 26-02947 (JWB) |
| Debtor. | ) | (Jointly Administered) |
| | ) | |

**THIRD INTERIM ORDER (I) AUTHORIZING INTERIM USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION AND RELATED RELIEF AND (III) SCHEDULING A FINAL HEARING**

Debtors Meritage Hospitality Group Inc., MHG Food Service, Inc., Wen Tennessee, LLC, Inspired by Opportunity, LLC, RES Management, LLC, Wen Ohio, LLC, Wen Carolinas, LLC, Wen South, LLC, Wen Oklahoma, LLC, Wen Georgia, LLC, WM Limited Partnership-1998, and Wen Virginia, LLC (collectively, "Debtors" or "CNB Debtors") having filed a *Motion for Entry of Interim and Final Orders (I) Authorizing Using of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code; (II) Granting Adequate Protection, Liens and Superpriority Claims to the Secured Lenders for the Use Thereof; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to the Use of Cash Collateral; and (IV) Granting Related Relief (City National Bank)* (Doc. No. 26, the "Motion")[2] for entry of an interim order (the "Interim Order") and final order (the "Final Order") pursuant to §§ 105, 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001-2 of the Local Bankruptcy Rules for the Western District of Michigan ("Local Rules"); City National Bank (in such capacity, the "Administrative Agent"), in

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Meritage Hospitality Group Inc. (0460); MHG Food Service, Inc. (5926); Wen Tennessee, LLC (2477); Inspired by Opportunity, LLC (3681); RES Management, LLC (9105); Wen Ohio, LLC (5959); Wen Carolinas, LLC (3792); Wen South, LLC (1229); Wen Oklahoma, LLC (5959); Wen Georgia, LLC (7369); WM Limited Partnership-1998 (9989); Wen Virginia, LLC (2840); Uncommon Hospitality, LLC (8858); and Chicken Ventures, LLC (7215). The corporate headquarters and mailing address for Debtors is 45 Ottawa Avenue SW, Suite 600, Grand Rapids, Michigan 49503. For the avoidance of doubt, "Debtors" as defined herein does not include Uncommon Hospitality, LLC or Chicken Ventures, LLC.

[2] Capitalized terms used herein and not otherwise defined shall have the meaning set forth in the Motion.

its capacity as administrative agent for the Lenders[3] and as L/C Issuer, having consented to the entry of this order (the "Interim Order"); the Court having entered that certain *Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection and Related Relief and (III) Scheduling a Final Hearing* (the "First Interim Order", Doc. No. 103) and that certain *Second Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection and Related Relief and (III) Scheduling a Final Hearing* (the "Second Interim Order", Doc. No. 256); the Court having considered the Motion, responses and replies, if any, and the evidence submitted at the hearings held before the Court on September 22, 2026, October 14, 2026 and November 24, 2026 in Grand Rapids, Michigan (collectively, the "Interim Hearing"); it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to Debtors and their estates pending a final hearing on the Motion and the terms of this Interim Order being otherwise fair and reasonable and in the best interests of Debtors, their creditors and their estates pending a final hearing, and essential for the continued operation of creditors and their estates pending the final hearing, and essential for continued operation of Debtors' businesses, and after due deliberation and consideration, and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A. **Petition Date.** On September 17, 2026 (the "Petition Date"), Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code initiating the above-referenced cases (the "Chapter 11 Cases"). Debtors are in possession of their property and continue to operate and

[3] "Lenders" means and collectively refers to City National Bank, BMO Bank N.A., Lake Forest Bank & Trust Company, N.A., First Horizon Bank, The Huntington National Bank, SMBC Manubank, Wintrust Bank, N.A., First Franchise Capital Corporation, and Old National Bank.

manage their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

B. **Jurisdiction.** The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Court further finds that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court further finds that venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are §§ 105(a), 361, 362 and 363 of the Bankruptcy Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules").

C. **Notice.** Notice of the Interim Hearing and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) the Administrative Agent, (iii) the official committee of unsecured creditors (the "Committee"), and (iv) the creditors holding the thirty (30) largest unsecured claims against the Debtors. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion comply with all relevant provisions of the Bankruptcy Rules and Local Rules and no other or further notice need be provided.

D. **Debtors' Stipulations.** Without prejudice to the rights of the Committee or any other party-in-interest with standing to contest the scope, validity, perfection and/or amount of the Administrative Agent's claims and liens pursuant to the procedure set forth in Paragraph 18 of this Interim Order, Debtors permanently, immediately and irrevocably acknowledge, represent, stipulate and agree (collectively, the "Stipulations"):

(i) As of the Petition Date, Debtors, Administrative Agent, Lenders and L/C Issuer are parties to that certain Third Amended and Restated Credit Agreement, dated as of August 5, 2021, as amended by that certain First Amendment to Third Amended and Restated Credit Agreement dated as of October 21, 2022, as further

amended by that certain Second Amendment to Third Amended and Restated Credit Agreement dated as of May 30, 2024, and as further amended by that certain Third Amendment to Third Amended and Restated Credit Agreement dated as of May 13, 2025 (collectively, as amended, the "Credit Agreement");

(ii) Pursuant to the Credit Agreement and promissory notes payable by Borrowers to Administrative Agent and/or Lender(s) (the "Notes"), Lenders made loans and Debtors are indebted to Administrative Agent and Lenders pursuant to (A) a term loan in the original principal amount of $120,000,000 ("Term Loan A-1A"), (B) a term loan in the original principal amount of $46,400,000 ("Term Loan A-1B"), (C) a term loan in the original principal amount of $15,400,000 ("Term Loan A-2"), (D) a delayed-draw term loan facility in the aggregate original principal amount of up to $80,000,000 ("Term Loan A-3"), (D) a delayed-draw term loan facility in the aggregate original principal amount of up to $6,000,000 ("Term Loan A-4"), and (E) a revolving credit facility in the aggregate original principal amount of up to $35,000,000 (the "Revolving Loan", together with Term Loans A-1, A-2, A-3, and A-4, the "Loans"), and L/C issued letters of credit to Debtors totaling $4,296,185.00 (the "L/C")[4];

(iii) Debtors are indebted, as of the Petition Date, to Administrative Agent, Lenders and L/C Issuer without defense, counterclaim, recoupment or offset of any kind, in the following amounts, plus Administrative Agent and Lenders' attorneys' fees and expenses (the "Obligations"):

[4] "Loan Documents" means and collectively refers to the Credit Agreement, the Notes, and all documents executed in connection therewith and/or related thereto, together with all amendments and/or modifications thereof.

| | Principal | Accrued Interest | Total | Per Diem |
|---|---|---|---|---|
| A-1 | $102,548,174.88 | $38,572.08 | $102,586,746.96 | $19,286.04 |
| A-2 | $12,713,317.04 | $4,783.56 | $12,718,100.60 | $2,391.78 |
| DL | $9,253,770.32 | $3,497.12 | $9,257,267.44 | $1,748.56 |
| RL | $10,755,218.14 | $4,579.16 | $10,759,797.30 | $2,289.59 |
| Total | $135,270,480.38 | $51,431.92 | $135,321,912.30 | $25,715.97 |

(iv) The Obligations are secured by valid, enforceable, properly perfected, first-priority and unavoidable liens and security interests (the "Pre-Petition Liens") encumbering all assets of Debtor as of the Petition Date, subject to the terms of the Loan Documents (the "Collateral"), and are not subject to avoidance, recharacterization, subordination, recovery, attack, counterclaim, defense, claim or challenge of any kind or nature under the Bankruptcy Code, applicable non-bankruptcy law or otherwise;

(v) The Pre-Petition Liens on the Collateral attach to all cash of the Debtors wherever located, and to Debtors' receipts and revenues, and all such cash, receipts and revenues constitute "cash collateral" within the meaning of Section 363(a) of the Bankruptcy Code;

(vi) Prior to the Petition Date, one or more Events of Default (as defined in the Credit Agreement) occurred and are continuing under the Credit Agreement and other Loan Documents; and

(vii) The Pre-Petition Liens attach to all cash of the Debtors wherever located, and to Debtors' receipts and revenues and, therefore, all such cash, receipts, proceeds and revenues constitute "cash collateral" within the meaning of Section 363(a) of the Bankruptcy Code.

E. **Need for Use of Cash Collateral.** Debtors have a pressing need for the immediate use of cash collateral to continue operating as a going concern, including funding day-to-day operations that includes payroll, vendors, and the costs of the Chapter 11 Cases, minimize disruption, rebut any skepticism regarding Debtors' ability to operate as a going-concern and stabilize business operations in response to these Chapter 11 Cases. In the absence of the continued use of Cash Collateral, serious and irreparable harm to Debtors and their estates will occur and impair Debtors' efforts to reorganize. Debtors reasonably and in good faith believe that the use of cash collateral is sufficient to fund all projected, legitimate and allowable expenses of the Chapter 11 Cases from the Petition Date through the period to which the budget attached hereto as Exhibit A (the "Budget") pertains.

F. **Administrative Agent's Consent.** Administrative Agent consents to Debtors' use of cash collateral only upon the terms and conditions contained in this Interim Order.

G. **Adequate Protection.** Pursuant to the Credit Agreement and other Loan Documents, Administrative Agent, Lenders and L/C Issuer are entitled to adequate protection of their interests in the Collateral and the proceeds thereof. Based on the record presented to the Court by Debtors at the Interim Hearing and Administrative Agent's consent to use of cash collateral on an interim basis, the terms of the use of cash collateral as set forth herein are fair and reasonable, reflect Debtors' exercise of their reasonable and prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

H. **Good Cause; Immediate Entry.** Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(d). Good and sufficient cause have been shown for immediate entry of this Interim Order. The Court concludes entry of this

Interim Order, and the use of the Collateral, including Cash Collateral, is in the best interests of Debtors, their estates and their creditors.

**IT IS HEREBY ORDERED that:**

1. **Motion Granted.** The Motion is hereby GRANTED on an interim basis to the extent set forth in this Interim Order. Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived or otherwise resolved, and all reservations of rights included therein are hereby denied and overruled. The rights of all parties in interest to object to entry of a Final Order are reserved.

2. **Limitation on Use of Cash Collateral.** All Cash Collateral (as defined in section 363 of the Bankruptcy Code) that the Debtors had on hand as of the Petition Date or have received since the Petition Date, including all products and proceeds of all Collateral constitute cash collateral and shall hereafter be referred to collectively as "Cash Collateral." No money shall be withdrawn by the Debtors from any accounts maintained by any Debtor (including any debtor-in-possession accounts established by any Debtor) except as expressly provided in this Interim Order or by further order of this Court. Debtors shall only make those disbursements of Cash Collateral as expressly provided in this Interim Order or by further order of this Court. All Cash Collateral that Debtors receive subsequent to entry of this Interim Order shall be swept daily into an operating account in accordance with any order approving the Debtors' cash management system.

3. **Use of Cash Collateral.** Unless an extension is otherwise agreed to in writing by Debtors and Administrative Agent, Debtors are authorized to use Cash Collateral as set forth in this Interim Order commencing from the Petition Date through and including (but not beyond) the earliest to occur of (i) the date on which a Termination Event (as defined below) shall occur, (ii) any order modifying Debtors' authority to use Cash Collateral and (iii) the close of business on

December 31, 2026; provided that such use of Cash Collateral shall be in accordance with the Budget.

4. **Restrictions on Use Cash Collateral.** Absent the prior written consent of Administrative Agent, the use of any Cash Collateral shall be restricted to payment, in the ordinary course of business, only of the expenses specified in the Budget. (All references to the Budget herein shall mean as the same is subject to the Permitted Variances (defined below) and to pay statutory fees owed to the United States Trustee; provided, however, absent Administrative Agent's prior written approval, Debtors are permitted during each weekly period covered by the Budget to exceed total outstanding disbursements as identified on the Budget by ten percent (10%) for Total Operating Disbursements plus "Capex" (which shall only include maintenance capex) measured on the cumulative period from the initiation of the Budget to the week then ended (the "Permitted Variances").) Under no circumstance shall Debtors (a) use any Cash Collateral for any purpose other than those authorized by this Interim Order and as outlined in the Budget without the written consent of Administrative Agent or further order of this Court, or (b) use Cash Collateral to the extent that expenses listed in the Budget are not actually incurred. So long as no Termination Event shall have occurred and be continuing, Debtors may request that Administrative Agent release funds from the Reserve Account[5] for payment of expenses in the Budget and subject to the amounts forecasted in the Budget and so long as total requests for release from the Reserve Account shall not exceed the amount held in the Reserve Account. Upon the earlier of (x) a Termination Event and (y) the Closing Date[6], any funds remaining in the Reserve Account may be applied by Administrative Agent to the amounts owed under the Credit Agreement, subject to

---

[5] "Reserve Account" means a segregated reserve account held by Administrative Agent.

[6] "Closing Date" means the date on which the closing of a sale of Debtors' assets, consisting of approximately 163 Wendy's restaurants, to Wendy's International, LLC or a third party purchaser upon Debtors' selection of an alternative purchaser occurs.

the Committee's challenge rights under this Interim Order and any subsequent interim or final cash collateral order.

5. **Adequate Protection; Replacement Lien.** As adequate protection for the respective interests of Administrative Agent, Lenders and L/C Issuer, for, and solely to the extent of, any diminution in the value of the Collateral resulting from (i) the Debtors' use of Cash Collateral, (ii) the use, sale, or lease of the Collateral (other than Cash Collateral) pursuant to § 363(c) of the Bankruptcy Code, and (iii) the imposition of the automatic stay pursuant to § 362(a) of the Bankruptcy Code, Administrative Agent is hereby granted, on behalf of itself and for the benefit of Lenders and L/C Issuer, a continuing replacement security interest in, and lien, effective as of the Petition Date without the necessity of Administrative Agent taking any further action, upon the right, title and interest in the following property of the Debtors: (a) All pre-petition Collateral of Administrative Agent, including all proceeds, profits, revenues, and products thereof; and (b) Property acquired by Debtors after the Petition Date that is of the same nature, kind, and character as the pre-petition Collateral, and all proceeds, profits, revenues, and products thereof (collectively, the "Replacement Liens"), which Replacement Liens shall be senior to any security interests, liens or allowed super-priority claims subsequently granted to any other person or entity. The Replacement Liens provided herein shall be deemed automatically valid and perfected with such priority as provided in this Interim Order, without any further notice or act by any party that may otherwise be required under any other law and without the necessity of Administrative Agent to take any further action. Notwithstanding the foregoing, Debtors shall, upon request of Administrative Agent, execute and deliver such documents as may be reasonably requested by Administrative Agent to create and perfect the security interests and liens described herein under applicable non-bankruptcy law and Administrative Agent shall be authorized to file and record

such documents and take such other actions as may be necessary to perfect such security interests and liens under all such laws and to correctly describe the collateral subject thereto. Interest shall accrue post-petition on the Obligations at the rate of interest set forth in the Credit Agreement and other Loan Documents until paid in full. Notwithstanding anything to the contrary herein, no liens shall be granted or extend to Debtors' real property leases, the leased premises or Debtors' interest in such leases or premises except to the extent (a) agreed to in writing by the applicable landlord (or its predecessor in interest), including in any pre-petition agreement, consent or collateral assignment of leases between a landlord and the Administrative Agent, or (b) permitted by the terms of the applicable lease(s) or pursuant to applicable law, but rather any liens shall extend only to the proceeds realized upon the sale, assignment, termination or other disposition of such leases, books and records relating to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance and other proceeds.

6. **Payments to Lender.** As additional adequate protection, beginning on the fifteenth (15th) day of each month, Debtors shall make monthly payments to Administrative Agent each in the amount of $200,000, which payment shall be applied (a) first, to Lender's unpaid attorneys' fees and expenses or Lender's attorneys' fees and expenses paid by Administrative Agent and for which Debtors have not reimbursed Administrative Agent, and (b) second, to unpaid accrued interest at the non-default rate of interest. The difference between (x) the monthly interest accrued at the non-default rate of interest and (y) the amount of the monthly payment that is applied to unpaid accrued interest shall be paid in kind and added to the outstanding principal balance owed under the Credit Agreement and other Loan Documents.

7. **Chapter 5 Causes of Action Reserved.** Nothing in this Interim Order shall grant Administrative Agent a lien on, or otherwise encumber, chapter 5 causes of action, which are expressly reserved.

8. **Adequate Protection Reservation.** Nothing herein shall be deemed to be a waiver by Administrative Agent, Lenders or L/C Issuer of their rights to request additional or further protection of their interests in any property, including property of Debtors, and/or to move for relief from the automatic stay (if such relief is required), or to seek appointment of a trustee or examiner, or dismissal of the Chapter 11 Cases, or to request any other relief. Likewise, nothing herein is deemed a waiver by Debtors or the Committee of the right to challenge any request for additional or further protection, stay relief, appointment of a trustee or examiner, or dismissal of the Chapter 11 Cases by any party in interest.

9. **Additional Adequate Protection.** As additional adequate protection, in the event that the adequate protection provided in this Interim Order is insufficient to protect the security interests of Administrative Agent, Lenders and/or L/C Issuer from the Debtors' use of Cash Collateral or from a diminution in value of the Collateral, upon entry of the Final Order, Administrative Agent's claim in the Chapter 11 Cases shall have priority under 11 U.S.C. § 507(b) to the extent, if any, that the adequate protection for Debtors' use of the Collateral and Cash Collateral provided herein proves to be inadequate.

10. Intentionally omitted.

11. **Conflict.** Any payment to be made by Debtors or any action to be taken by Debtors in regard to any other first day motion shall be subject to (a) the terms of this Interim Order, or (b) prior written approval of Administrative Agent. To the extent that there is any inconsistency

between this Interim Order and any other order of the Court, the terms of this Interim Order shall control, unless this Interim Order is expressly modified by further order of the Court.

12. **No Prejudice to Request Additional Relief.** Nothing contained in this Interim Order shall be deemed a finding with respect to the sufficiency of the adequate protection (as that term is defined in § 361 of the Bankruptcy Code) of the interests of Administrative Agent, other than for the purposes of granting the relief herein, or prejudice the right of Administrative Agent to request adequate protection in addition to that provided under the terms of this Interim Order. Further, nothing contained herein shall prejudice the rights of Administrative Agent, Lenders or L/C Issuer to seek relief from the automatic stay or dismissal or conversion of the Chapter 11 Cases.

13. **Section 363(m) Protection.** Administrative Agent shall have the full protection of Section 363(m) of the Bankruptcy Code with respect to the debts, obligations, liens, and security interests created or authorized by this Interim Order in the event that this Interim Order or any other authority contained or created by this Interim Order is vacated, reversed, or modified on appeal or otherwise by any court.

14. **Access to Collateral.** Upon not less than five (5) business days' advance written notice of a request by Administrative Agent or its attorneys, financial advisors, agents or other representatives to access Administrative Agent's pre-petition Collateral or post-petition Collateral, Debtors shall grant access, during normal business hours, to Debtors' books, records, business premises, and the Collateral to enable Administrative Agent to (a) review, appraise, inspect, and evaluate the Collateral, and (b) inspect and review the financial records and all other records of Debtors concerning the operation of the Debtors' business. Debtors shall fully cooperate with

Administrative Agent, its attorneys, financial advisors, agents and other representatives regarding any such reviews, evaluations, inspections and appraisals.

15. **Reporting.** Debtors shall supply to Administrative Agent, the Committee and Quality Is Our Recipe, LLC ("QIOR") the following information:

(a) An accounting of all Cash Collateral actually spent by Debtors since the Petition Date in comparison to the projected expenditures set forth in the Budget, including a line-item, side-by-side comparison of the amounts actually spent within the corresponding projected expense categories contained in the Budget, which shall be in a form consistent with the Budget and delivered to Administrative Agent, the Committee and QIOR by not later than Thursday of each week following entry of this Interim Order;

(b) A proposed rolling thirteen-week cash flow forecast in a form consistent with the Budget and delivered to Administrative Agent, the Committee and QIOR by not later than Thursday of each week following entry of this Interim Order;

(c) As and when filed, all reports and other documents and pleadings filed by Debtors with the Bankruptcy Court, which requirement shall be deemed satisfied if provided by ECF notice to counsel of record for Administrative Agent, the Committee and QIOR;

(d) all reporting requirements under the terms of the Loan Documents specifically provided for and identified by Administrative Agent to Debtors (which reporting shall be provided simultaneously to the Administrative Agent, Committee and QIOR);

(e) all information reasonably requested by Administrative Agent (which information shall be provided simultaneously to the Administrative Agent, the Committee and QIOR);

(f) within three (3) business days of a request by Administrative Agent to Debtors, but in no event later than three (3) days before a final hearing or further interim hearing on the Motion, an updated budget forecast for the subsequent thirteen (13) week period in a form consistent with the Budget; and

(g) on or before December 21, 2026, a proposed budget forecast for a period covering six (6) months beginning January 1, 2027 for a proposed debtor-in-possession loan, including information supporting the size of the debtor-in-possession loan requested by Debtors.

16. **Reporting and Payments to United States Trustee.** Debtors shall timely file all required reports and make all required payments due to the U.S. Trustee during the pendency of the Chapter 11 Cases.

17. **Carve Out.** Notwithstanding any provision of this Interim Order to the contrary, the Cash Collateral may be used for payment of the following (the "Carve Out"), and all claims and liens granted by this Interim Order shall be subject thereto:

(a) with respect to professional fees and disbursements by the professionals retained by Debtors pursuant to Bankruptcy Code Section 327 or 363 ("Debtors' Retained Professionals"): (i) professional fees and disbursements incurred on or prior to Debtors' receipt of a written notice of the occurrence of a Termination Event in an amount not to exceed the aggregate amounts approved pursuant to the Budget and allowed by the Court, provided, however, that Budget periods shall be

amended so that the Debtors may carry forward any unspent budgeted line item disbursements for Debtors' Retained Professionals from prior periods, and (ii) professional fees and disbursements for Debtors' Retained Professionals incurred following Debtors' receipt of a written notice of the occurrence of a Termination Event in an amount not to exceed $100,000;

(b) with respect to professional fees and disbursements by the professionals retained by the Committee pursuant to Bankruptcy Code Section 1103(a) ("Committee Retained Professionals", together with the Debtors' Retained Professionals, the "Retained Professionals"): (i) professional fees and disbursements incurred on or prior to Debtors' receipt of a written notice of the occurrence a Termination Event in an amount not to exceed the aggregate amounts approved pursuant to the Budget and allowed by the Court, provided, however, that Budget periods shall be amended so that the Committee may carry forward any unspent budgeted line item disbursements for the Committee's retained professionals from prior periods, and (ii) professional fees and disbursements incurred by the Committee Retained Professionals following Debtors' receipt of a written notice of the occurrence of a Termination Event in an amount not to exceed $20,000; and

(c) statutory fees payable to the United States Trustee, together with any statutory interest, and any fees payable to the Clerk of Court (the "Statutory Fees"), which Statutory Fees shall not be subject to the Budget.

Notwithstanding anything to the contrary herein, no Cash Collateral or any portion of the Carve Out may be used to investigate or assert any claims or causes of action against the Administrative

Agent, Lenders and/or L/C Issuer or to object to or contest in any manner, raise any defenses to, the validity, perfection, priority, extent or enforceability of Debtors' obligations under the Loan Documents, Pre-Petition Liens, the Obligations, or the Replacement Liens granted herein; provided, however, that up to $35,000 may be used by the Committee to investigate any such claims or causes of action relating to the Loan Documents and/or Obligations. Nothing herein allows the payment of any fees or expenses of Retained Professionals absent approval of the same by the Court pursuant to a fee application on notice, or such other procedures that may be approved by the Court.

(d) On a weekly basis, Debtors shall fund into an account maintained at Wells Fargo by Debtors (the "Funded Reserve Account") for the benefit of Retained Professionals (which account shall be subject to the cash management order), an amount (the "Funded Reserve Amount") equal to the sum of the total weekly fees of Retained Professionals (in the amount set forth on a line item basis with respect to each such person in the Approved Budget for Debtors' Retained Professionals and Committee Retained Professionals) for the current week subject to the Budget. Funds in the Funded Reserve Account shall be allocated for the benefit of each Retained Professional in the amount set forth in the Approved Budget for each Retained Professional. Debtors shall use funds held in the Funded Reserve Account exclusively to pay allowed professional fees of Retained Professional as they become allowed and payable pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of this Court, and any interim or final orders of the Bankruptcy Court. Any amounts remaining in the Funded Reserve Account not otherwise disbursed as provided herein will be paid to Administrative

Agent. Administrative Agent is hereby granted, on behalf of itself and for the benefit of Lenders and L/C Issuer, a continuing replacement security interest in, and lien, on the Funded Reserve Account, effective as of the Petition Date without the necessity of Administrative Agent taking any further action.

18. **Stipulations Binding. The stipulations and contentions contained in this Interim Order shall be binding upon all parties in interest, including without limitation, Debtors, their successors (including any chapter 7 or chapter 11 trustee), their estates and the Committee and all parties in interest, and Debtors, their successors (including any chapter 7 or chapter 11 trustee), their estate and the Committee will be deemed to have irrevocably waived and relinquished all claims and right to challenge any of the stipulations and contentions in this Interim Order unless (a) the Committee, chapter 7 trustee or chapter 11 trustee has filed an adversary proceeding or contested matter challenging the validity, enforceability, or priority of the Obligations or the Pre-Petition Liens or otherwise asserting any claims or causes of action against Administrative Agent on behalf of Debtors' estates (a "Challenge Action"), no later than the date that is the later of (x) seventy-five (75) days after the entry of the First Interim Order, and (y) sixty (60) days from the date of the appointment of a Committee, chapter 7 trustee or chapter 11 trustee (the "Challenge Deadline"), and (b) the Court rules in favor of the plaintiff in any such adversary proceeding or contested matter. The filing by the Committee of a motion for standing to pursue a Challenge Action filed before the Challenge Deadline shall automatically toll the Challenge Deadline solely with respect to those matters for which standing has been requested in such motion until the date that is three (3) days following adjudication of such motion. If, prior to the Challenge Deadline, the Chapter 11 Cases convert to a chapter 7 or a chapter 11 trustee is appointed,**

**the Challenge Deadline shall be extended for the chapter 7 or chapter 11 trustee to sixty (60) days after their appointment. If no such adversary proceeding or contested matter is commenced as of the Challenge Deadline, the Obligations shall constitute allowed claims, in the amount set forth herein, not subject to subordination and otherwise unavoidable, for all purposes in the Chapter 11 Cases and any subsequent chapter 7 case, the Pre-Petition Liens on the Collateral shall be deemed legal, valid, binding, perfected, and first-priority liens not subject to subordination and otherwise unavoidable, and the Obligations and the Pre-Petition Liens on the Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto. If any such adversary proceeding or contested matter is commenced on or prior to the Challenge Deadline, the stipulations contained in this Interim Order shall nonetheless remain binding and preclusive except to the extent that such stipulations were expressly challenged in such adversary proceeding or contested matter, subject to such adversary proceeding or complaint being amended. Nothing in this Interim Order vests or confers on any person, including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates or to pursue a Challenge Action.**

19. **Not Limiting on United States Trustee.** Nothing in this Interim Order binds, bars or restricts at any time any action by the Office of the United States Trustee.

20. Intentionally omitted.

21. **Termination Event.** Each of the following shall constitute a "Termination Event" under this Interim Order, unless waived in writing by Administrative Agent:

(a) Failure of any Debtor to abide by the terms, covenants, and conditions of this Interim Order or the Budget (subject to any permitted variances);

(b) Any application is filed by any Debtor for the approval of (or an order is entered by the Court approving) any claim arising under Section 507(b) of the Bankruptcy Code or otherwise, or any lien in any of the Chapter 11 Cases, that is *pari passu* with or senior to the Obligations or Replacement Liens and adequate protection granted herein, unless consented to in writing by Administrative Agent

(c) Any Debtor commences or supports any action against Administrative Agent, Lenders or L/C issuer to subordinate or avoid any liens granted pursuant to or in connection with the Credit Agreement or other Loan Documents or to avoid any obligations incurred in connection therewith;

(d) The use of Cash Collateral for any purpose not authorized by this Interim Order;

(e) Failure of Debtors to pay fees of the U.S. Trustee pursuant to the requirements of the U.S. Trustee, including under 11 U.S.C. § 1129(a)(12), subject to any cure periods permitted or allowed by the U.S. Trustee;

(f) Failure of Debtors to timely file any reports required to be filed by the U.S. Trustee, Bankruptcy Code or Local Rules;

(g) Appointment of a chapter 11 trustee or the appointment of an examiner with expanded powers over any Debtor;

(h) Conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

(i) Termination of one or more of Debtors' franchise agreements with QIOR or entry of an order by the Court finding that the Debtors' franchise agreements are or were terminated or are no longer in effect, unless one or more agreements are terminated in connection with the shutdown of store or is consented to in writing by Administrative Agent;

(j) Any of the Chapter 11 Cases are dismissed;

(k) The entry of an order of this or any other Court (other than the Final Order) reversing, staying, vacating or otherwise modifying in any material respect the terms of this Interim Order;

(l) Any Debtor files a motion seeking to obtain financing that does not fully satisfy the indebtedness owed to Administrative Agent, Lenders and L/C Issuer or seeking to prime their Pre-Petition Liens on any of the Collateral and an order is entered by the Court approving such motion;

(m) Debtors close the sale of substantially all of their assets without an order of the Bankruptcy Court approving such sale (after notice and hearing) or consent by Administrative Agent thereto or by confirmation of a plan of reorganization (all of which Administrative Agent reserves the right to oppose if, as and when Debtors proceed with any such action(s)); or

(n) Failure of Debtors to timely pay the Administrative Agent, Lenders and L/C Issuer the amount of their fees and expenses within the period set forth in this Interim Order.

22. **Remedies.** Upon Debtors' receipt of notice of the occurrence of a Termination Event:

(a) Debtors are prohibited from using Cash Collateral until further order of this Court other than as set forth in this Interim Order; provided that (x) Administrative Agent gives five (5) business days' written notice to Debtors (the "Remedies Notice Period") (with a copy to the United States Trustee and Committee) and (y) during the Remedies Notice Period, Debtors or the Committee may seek an expedited hearing on any grounds, including but not limited to contesting whether a Termination Event has occurred/is occurring;

(b) Administrative Agent shall be fully authorized, in its sole and absolute discretion, to demand immediate payment, in cash, of the Obligations; and

(c) Administrative Agent shall have the right, free of any restrictions of Section 362 of the Bankruptcy Code or any other applicable law or rule, to take immediate reasonable actions and steps to protect the Collateral from harm, theft and/or dissipation and to exercise its rights and remedies as to all or such part of the Collateral as it may elect, including but not limited to, the right to foreclose upon and/or sell the Collateral and to exercise any rights and/or remedies available to Administrative Agent under applicable law and to apply the proceeds of the Collateral to the repayment of the Obligations in accordance with the Loan Documents.

Notwithstanding anything to the contrary herein, except to the extent agreed to in writing by the applicable landlord (or its predecessor in interest) or permitted by the terms of the applicable lease(s) or pursuant to applicable law, Administrative Agent's rights to enter onto Debtors' leased premises upon the occurrence and continuation of a Termination Event shall be limited to (i) any such rights agreed to in writing by the applicable landlord (or its predecessor in interest) (including

without limitation, in the governing lease or any landlord consent or similar agreement), (ii) any rights that Administrative Agent has or may have under applicable non-bankruptcy law, and (iii) any such rights as may be granted by the Court on separate motion with no less than seven (7) days' notice to the applicable landlord and an opportunity for such landlord to be heard.

23. **Notice.** Where required under this Interim Order, notice shall be provided as set forth below via email, U.S. Mail or overnight delivery service as follows, and shall be effective when deposited or transmitted:

**To Debtors:**
c/o Meritage Hospitality Group Inc.
45 Ottawa Avenue SW, Suite 600
Grand Rapids, Michigan 49503
Attn: Gary Rose
Email: grose@mhgi.net

*with a copy to:*
Scott N. Opincar, Esq.
Michael Kaczka, Esq.
McDonald Hopkins
600 Superior Avenue East, Suite 2100
Cleveland, Ohio 44114
Email: sopincar@mcdonaldhopkins.com, mkaczka@mcdonaldhopkins.com

**To Administrative Agent:**
City National Bank
555 So. Flower Street, 16th Floor
Los Angeles, California 90071
Attn: Michael Rosenheck
Email: mike.rosenheck@cnb.com

*with a copy to:*
Frank W. DeBorde, Esq.
Lisa Wolgast
Barnes & Thornburg LLP
3340 Peachtree Road NE, Suite 2900
Atlanta, Georgia 30326
Email: fdeborde@btlaw.com, lwolgast@btlaw.com

**To the Committee:**
David M. Posner, Esq.

Gianfranco Finizio, Esq.
Eric S. Chafetz, Esq.
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
Email: DPosner@lowenstein.com, GFinizio@lowenstein.com,
EChafetz@lowenstein.com

24. **No Modification/Reversal.** If any or all of the provisions of this Interim Order are modified, vacated, or stayed by subsequent order of this or any other Court, such stay, modification, or vacatur shall not affect the validity and enforceability of any security interest or lien granted or authorized by this Interim Order prior to such stay, modification, or vacatur. The reversal or modification on appeal of any or all of the provisions of this Interim Order shall not affect the validity or enforceability of any security interest or lien granted or authorized by this Interim Order.

25. **No Waiver.** The failure of Administrative Agent to seek relief or otherwise exercise its rights and remedies under this Interim Order, the Loan Documents or otherwise, as applicable, shall not constitute a waiver of any of Administrative Agent's respective rights hereunder, thereunder or otherwise. Nothing contained in this Interim Order shall be deemed to terminate, modify, or release any obligations of any non-debtor with respect to its obligations under any of the Loan Documents, nor to impose any obligations in any respect beyond the terms of the Loan Documents.

26. **Section 506(c) Waiver.** Administrative Agent does not consent to any charge, lien, assessment or claim against the Collateral under Section 506(c) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action, inaction, or acquiescence by Administrative Agent. Subject to and effective upon the earlier of (x) the entry of a further interim order and (y) the entry of a Final Order, (a) no costs or expenses of administration that

have been or may be incurred in these cases, at any time, shall be charged against Administrative Agent, Lenders, L/C Issuer or against the Collateral pursuant to Bankruptcy Code Sections 506(c), 105(a) or any other applicable law, without the express written consent of Administrative Agent and no such consent shall be implied from any action, inaction or acquiescence by Administrative Agent, and (b) Administrative Agent shall be entitled to a waiver of any "equities of the case" exception under Section 552(b) of the Bankruptcy Code and a waiver of the provisions of Section 506(c) of the Bankruptcy Code. **Notice is hereby given that Administrative Agent intends to seek the waiver described in this paragraph effective upon the earlier of (a) the entry of a further interim order and (y) a Final Order.** Any party in interest objecting to the entry of an order granting the waiver described in this paragraph shall file a written objection with the United States Bankruptcy Court Clerk for the Western District of Michigan by the date and time listed in Paragraph 32 hereof and shall serve such objection pursuant to Paragraph 32 hereof.

27. **Retention of Jurisdiction.** The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

28. **Modification of Stay; Effectiveness.** The automatic stay of Section 362 of the Bankruptcy Code is hereby modified to permit the performance of each and every right and obligation set forth in this Interim Order. Notwithstanding Bankruptcy Rule 4001(a)(1), this Interim Order is not stayed and shall be effective upon the date of its entry on the docket. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

29. **Service.** Debtors' counsel shall serve a copy of this Order on all parties who are required to be served under Bankruptcy Rule 4001(d).

30. **Headings.** Headings in this Interim Order are for purposes of reference and convenience only and shall not limit or otherwise affect the meaning in this Interim Order.

31. **Payment to McLane Foodservice, Inc. and Willow Run Foods.**

(a) Notwithstanding any provision of this Interim Order to the contrary, Cash Collateral may be used for payment of the following (the "McLane Carve Out"), and all claims and liens granted by this Interim Order or otherwise held by Administrative Agent shall be subject thereto, the claims of McLane Foodservice, Inc. ("McLane") on account of goods provided by McLane to Debtors up to $1,000,000. Debtors are authorized to (a) subject to the Court's entry of an order addressing payment to critical vendors, pay, or cause to be paid, the prepetition obligations of Debtors to McLane, and (b) pay McLane on accounts of goods received by the Debtors provided by McLane post-petition following entry of this Interim Order.

(b) Notwithstanding any provision of this Interim Order to the contrary, Cash Collateral may be used for payment of the following (the "Willow Run Carve Out"), and all claims and liens granted by this Interim Order or otherwise held by Administrative Agent shall be subject thereto, the claims of Willow Run Foods ("Willow Run") on account of goods provided by Willow Run to Debtors up to $470,000. Debtors are authorized to (a) subject to the Court's entry of an order addressing payment to critical vendors, pay, or cause to be paid, the prepetition obligations of Debtors to Willow Run, and (b) pay Willow Run on accounts of goods received by the Debtors provided by Willow Run post-petition following entry of this Interim Order.

32. __**Hearing Notice; Objections.**__ **A further interim hearing or the Final Hearing will be held on December 29, 2026, at 10:00 a.m. in the United States Bankruptcy Court for the Western District of Michigan, 1 Division Avenue N., Room 200, Grand Rapids, Michigan, Courtroom B.** Any party-in-interest objecting to the entry of a further interim order or a final order authorizing the use of Cash Collateral shall file written objections with the United States Bankruptcy Court Clerk for the Western District of Michigan no later than 5:00 p.m. on December 22, 2026 and served via ECF on counsel for Debtors, counsel for Administrative Agent and all other parties appearing in this action. Objections to this Interim Order shall be filed within fourteen (14) days from the service by Debtors of this Interim Order, except that a Committee may file an objection within fourteen (14) days of its formation. If an objection is timely filed, a final hearing will be held. If no objections are timely filed, an order may become final.

[END OF ORDER]

Prepared and presented by:

*/s/ Scott N. Opincar*
**MCDONALD HOPKINS LLC**
Scott N. Opincar
Michael J. Kaczka
Maria G. Carr (admitted *pro hac vice*)
600 Superior Ave. East, Suite 2100
Cleveland, OH 44114
Telephone: (216) 348-5400
Email: sopincar@mcdonaldhopkins.com
mkaczka@mcdonaldhopkins.com
mcarr@mcdonaldhopkins.com

*Proposed Counsel for the Debtors and Debtors in Possession*